Sonny Lauren HARMON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–782.

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1988.

Thomas G. Smith, Jr., Purcell, for appellant.

Michael C. Turpen, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

**OPINION**

BUSSEY, Judge:

The appellant, Sonny Lauren Harmon, was convicted in the District Court of Cleveland County, Case No. CRF–84–1339, of Larceny of an Automobile After Former Conviction of a Felony, and Attempted Larceny of an Automobile After Former Conviction of a Felony, for which he received sentences of fifteen years' imprisonment on each count. He appeals raising seven assignments of error.

Briefly stated, the facts reveal that the appellant was observed by police officers from the top of Lloyd Noble Center in Norman, cruising the parking lot in his Camaro during a concert on December 9, 1984. He parked, entered a locked Camaro, and after failing to start it, he drove to another location in the lot, entered and started another Camaro. His accomplice drove that vehicle off the lot, and the appellant left in his car. Once on the street adjacent to Lloyd Noble Center, the appellant was stopped and arrested by officers in patrol units.

The appellant contends in his first assignment of error that his right to a speedy trial was denied when the trial court allowed the State to amend the information and also permitted the case to be remanded for a preliminary hearing. Determining whether a defendant has been denied his right to a speedy trial depends on the balancing of four factors: the length of the delay, the reason for delay, defendant's assertion of his right, and the resulting prejudice to the defendant. *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983). Concerning the length of the delay, the crime occurred on December 9, 1984, the original information was filed on December 11, 1984, and the appellant's trial was held on May 22, 1985, five months after the crime was committed. We have held that other appellants were not denied their right to a speedy trial who waited longer periods. *See McDuffie v. State*, 651 P.2d 1055 (Okl. Cr.1982) (264 days); *Blades v. State*, 619 P.2d 875 (Okl.Cr.1979), *cert. denied*, 499 U.S. 845, 101 S.Ct. 129, 66 L.Ed.2d 54 (1980) (two years and nine months); and *Bauhaus v. State*, 532 P.2d 434 (Okl.Cr. 1975), *cert. denied*, 434 U.S. 972, 98 S.Ct. 525, 54 L.Ed.2d 462 (1977) (one year and three months).

Concerning the reason for delay, the record reveals that on December 21, 1984, the appellant waived his preliminary hearing and the case was set for the next jury docket. On December 28, 1984, the State amended the information adding two counts of attempted larceny of an automobile to the count of larceny of an automobile already charged. Accordingly, on January 3, 1985, the State moved to strike the hearing from the jury docket and remand for a preliminary hearing, and also added a second page to the information alleging a former conviction. The motion was granted and preliminary hearing was set for Monday, February 25, 1985, but on that date the hearing was reset until March 7, 1985, because the appellant's alleged accomplice had just been taken into custody that weekend. On the March date, a preliminary hearing was held. At the arraignment on March 20, the court set the hearing for March 29 over the appellant's objection, but on March 28, 1985, the court sustained the objection and passed the hearing to the May 20, 1985 jury term. Except for the appellant's objection, he could have been tried in March.

Although the appellant asserted his right to a speedy trial by objection to the delay, he was responsible for some of the delay, and does not show how he was prejudiced by the delay because he was out on bond during the five month period, and has not shown how his defense was impaired during such a short delay. *See Blades*, 619 P.2d at 878. Accordingly, we find no merit in this assignment of error.

The appellant alleges in his second assignment of error that the trial court should have sustained his motion to sup-

press evidence obtained from his vehicle during a warrantless search. The appellant complains that a purse, a wallet, and tools allegedly used in the theft of vehicles were admitted over his objection. The record reveals that after the appellant was stopped and arrested, his car was inventoried and impounded, according to written OUPD procedural policy. That policy authorizes impoundment following custodial arrest of the driver where there is no other occupant of the vehicle who can drive it, and the vehicle is not legally parked. (State's exhibit 25). That policy states that all areas of unlocked vehicles which are accessible without forced entry will be inventoried, including all containers found in the vehicle which, unless locked and no key is present, shall be opened and the contents inventoried. In the recent case of *Colorado v. Bertine*, 479 U.S. ——, ——, 107 S.Ct. 738, 742, 93 L.Ed.2d 739, 747 (1987), the Supreme Court held that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." In *Bertine*, police inventoried his van after he was arrested for driving while under the influence of alcohol. During the inventory, a closed backpack was found and when opened and examined, it contained controlled substances, cocaine paraphernalia, and a large amount of cash. The Supreme Court found that the Fourth Amendment does not prohibit a state from proving charges with evidence discovered during such an inventory. Accordingly, this assignment of error is without merit.

■ In his third assignment of error, the appellant argues that he was denied his constitutional right to confrontation of the witnesses against him when the trial court would not allow defense counsel to cross-examine the State's witnesses concerning the original charges against him. In the first information filed and in the amended information filed subsequently, the appellant was charged with stealing his own vehicle. Appellant desired to attack the credibility of State's witnesses by cross-examination on this subject. As we observed in *Cameron v. State*, 561 P.2d 118, 121 (Okl.Cr.1977), cross-examination is not a li-

cense for asking incompetent, irrelevant and immaterial questions which are not germane to any issue relating to the guilt or innocence of the accused. We fail to see how the fact that the information was amended would tend to make the State's witnesses less believable. After stating that defense was repeatedly prohibited from any inquiry or cross-examination of the State's key witnesses in this regard, he cites this Court to the testimony of Officer Gary Clement and Officer Debra Snider. Clement observed from the roof of Lloyd Noble building, two men drive a reddish Camaro into the Lloyd Noble parking lot, cruise up and down the rows of parked cars until they came across a light colored Camaro, where the driver did something to the door of the second Camaro, entered it and let the passenger inside. After being bent over the steering column for one or two minutes, the two men left the second Camaro, got back in the first Camaro and drove to a spot near a dark-colored Camaro. The driver went to the driver's side of this third Camaro and after about thirty seconds, he entered the vehicle and let the passenger in on the passenger's side. After a few seconds Officer Clement saw the lights of the third Camaro come on, the driver went back to the first Camaro and both vehicles were driven from the lot with the first Camaro in the lead. Clement observed Officer Hill stop the first Camaro, and observed the third Camaro pursued out of sight.

Officer Debra Snider testified concerning lifting fingerprints from the driver's window of the second Camaro. Defense counsel attempted for a second time to question concerning the initial information and was prohibited by the court.

Given the testimony of these two witnesses, whether or not there was confusion on the initial information concerning which Camaro was stolen, that fact would not detract at all from the credibility of either of the two witnesses. It certainly would not make their testimony less probable, and defense counsel did not impeach Officer Clement concerning which Camaro originally entered the parking lot, and that it was

stopped within his view. Certainly the charge in the initial information does not make less probable Officer Snider's testimony concerning the lifting of fingerprints from the second Camaro. We therefore find that the trial court properly excluded the fact that the first information did not accurately state which Camaro was stolen.

■ The appellant next asserts that evidence was admitted for which there was no proper foundation, and that the evidence was otherwise insufficient to sustain his conviction. That evidence concerned prints taken from the Camaro and the fact that one of the owners did not testify concerning lack of consent to enter his vehicle. He complains that the evidence given by Officer Snider did not indicate when the print was lifted or where the second Camaro (the attempted larceny) was at the time. However, the cross-examination of Officer Snider revealed that the print in question was lifted at the Lloyd Noble parking lot, after the concert was over, and after the owner had arrived, and most of the traffic from the parking lot had departed.

Concerning the prints taken off the third Camaro, which was the basis for the larceny charge, Detective Choate, who took the prints, stated that he went to Lexington, that when he was there he took the prints, and that the print cards gave the date and the time. When defense counsel objected to the admission of the latent prints taken by Snider and Choate, the trial judge properly overruled the objection.

The appellant's third subproposition under this assignment of error is that the State failed to show that the owner of the second Camaro did not consent to entry into his vehicle. The transcript clearly reveals that when the owner was examined he was asked: "Did you give anybody permission to enter your car while you were in the concert?" Answer: "No, sir."

An examination of the record reveals that sufficient evidence was presented for the trier of fact to find the appellant guilty on both charges. *See Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). This assignment of error has no merit.

■ The appellant's fifth assignment of error claims that his former conviction used to enhance his punishment was too remote. *See* 21 O.S. 1981, § 51A. The judgment and sentence from the Superior Court of the State of California for the crime of receiving stolen property was dated July 13, 1973 and ordered that the appellant be placed on probation for a period of three years, and that "as a condition of probation" he be imprisoned in the county jail for five months. The offenses were committed on December 9, 1984. Because a period of ten years elapsed from the time he completed his imprisonment, and the time the offenses were committed, he claims that the prior conviction could not be used to enhance his punishment. The applicable statute provides:

> No person shall be sentenced as a second and subsequent offender under Section 51 of Title 21, or any other section of the Oklahoma Statutes, when a period of ten (10) years has elapsed since the *completion of the sentence* imposed on the former conviction; provided, said person has not, in the meantime, been convicted of a misdemeanor involving moral turpitude or felony. [Emphasis added.]

21 O.S.1981, § 51A. This statute was construed in *Nipps v. State,* 576 P.2d 310 (Okl.Cr.1978), where we held that the phrase "completion of the sentence" meant when the Department of Corrections had relinquished their control of a defendant and unconditionally released him. According to the judgment and sentence, the appellant remained on parole for a period of three years from July 13, 1973, which would have been July 13, 1976. The completion of his sentence was not until the latter date, at which time he would have been released from parole. The ten year period began to run on that date. Therefore the prior conviction was properly admitted against the appellant, and this assignment of error is meritless.

■ In the last assignment of error, the appellant maintains that his sentence was excessive, and that the trial court abused its discretion in running the sentences consecutively. We have consistently held that excessiveness of punishment is determined

by a study of all the facts and circumstances surrounding an individual case, and that this Court does not have the power to modify a sentence unless we can say that under the circumstances, the sentence is so excessive that it shocks the conscience of this Court. *Ahhaitty v. State*, 715 P.2d 82 (Okl.Cr.1986). Whether to run sentences concurrently or consecutively is within the trial court's discretion. *Lloyd v. State*, 654 P.2d 645 (Okl.Cr.1982). We find nothing to show an abuse of that discretion.

The judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

Although I concur in the majority opinion, I write separately to more fully discuss appellant's second assignment of error urging that the trial court erred in allowing the State to amend the information to add an after former conviction charge. Appellant correctly points out that in *Price v. State*, 598 P.2d 668, 669 (Okl.Cr.1979), this Court held that it is reversible error for the State to amend an information on the day of trial to add an after former conviction charge, where the defendant was not informed of such charge at the preliminary hearing. The rationale behind our ruling in *Price* was that:

> [T]he accused has the fundamental right to presume that he has been fully complained against in the preliminary hearing, and cannot lawfully be held to answer a greater charge entailing more severe penalties ... [T]he State should not be permitted to use the prior conviction charge as a last minute amendment to the information in order to surprise the defense. Even persons charged with being habitual criminals are entitled to due process of law.

The instant case, however, is clearly distinguishable from the situation present in *Price*. Here, the State's motion to strike the case from the jury docket was granted and also the trial court remanded the case for a preliminary hearing which was held on March 7, 1985, in order to grant appellant his rights under *Price*. Thereafter, the trial was held on May 22, 1985, more than two (2) months after the preliminary hearing, and more than four (4) months after the information was actually amended which occurred on January 3, 1985.

With regard to appellant's fourth assignment of error, I simply note that the State presented sufficient evidence to show that the fingerprints were impressed at the time of the crime and, insofar as the appellant does not allege that any actual tampering occurred, any breaks in the chain of custody went to the weight and credibility of the evidence rather than its admissibility. *See Nelson v. State*, 687 P.2d 744, 746 (Okl.Cr. 1984).

Accordingly, based on the foregoing, I concur in the majority opinion.