(760 P.2d 1225)

No. 61,926

In the Matter of the Marriage of TERRY BREWER, *Appellant,* and SANDRA BREWER, *Appellee.*

 Opinion filed September 9, 1988. 

*Karen L. Shelor* and *Mark J. Sachse,* of Callen, Sexton & Shelor, of Kansas City, for appellant.

*H. Reed Walker,* of Barnett & Ross, Chartered, of Kansas City, for appellee.

Before BRAZIL, P.J., GERNON, J., and CLARENCE E. RENNER, District Judge, assigned.

RENNER, J.: Terry Brewer, an incarcerated felon, appeals the denial of his motion seeking visitation with his two children. He contends that he is entitled to visitation as a matter of law and that denial of visitation is a violation of his constitutional rights. We affirm.

Terry and his wife, Sandra, were divorced following a hearing on April 25, 1986. The decree made the following provision regarding custody and visitation:

"10. The petitioner is awarded sole custody of the minor children, to wit: Joshua Terran Brewer, born September 18, 1983, and Danielle Kaye Brewer, born February 12, 1985. [Neither] [j]oint custody nor visitation is awarded due to respondent's incarceration at Lansing State Penitentiary." (At the time of the hearing on Terry's post-trial motion for visitation, he was incarcerated at a minimum security facility in Ottawa, Kansas.)

K.S.A. 1987 Supp. 60-1616 provides in part:

"(a) *Parents.* A parent not granted custody or residency of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health.

. . . .

"(c) *Modification.* The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."

In announcing its decision following the hearing on Terry's post-trial motion, the court stated in part:

"And, I realize . . . there is a provision [K.A.R. 44-7-104] for the visitation of children out there, but, . . . that is involving children, for example, a lot of times when there is no divorce, that the mother or the children are of an older age, and they know the circumstances, and they want to visit.

"And I haven't heard that in this case yet. I haven't heard anything from the children that would indicate that they want to visit their father there in the setting.

. . . .

"[A]nd my personal opinion is, I think it would be better . . . for the children, both socially, psychologically, and otherwise, for those children not to be taken to such a setting and visit with their father.

. . . .

"I realize that if I deny this motion to visit the children, by the respondent . . . when he is released and the visitation is applied for . . . and is granted, I realize it would be tough to reinstitute it or to see that it's carried out.

"I think there's going to be a whole lot of problems. I don't think this sort of thing solves anything. I can't see that . . . it's to the benefit of the children to visit their father while he is in prison in that setting. . . . [S]ince I have seen this motion, I have tried to . . . think . . . and I have not been able to come up with anything that would merit it and be in the real plus side of the children to be able to visit their father in this condition.

"Obviously, they're young enough they probably didn't know their father, anyway, due to their age . . . . But, I just can't see it. I really can't."

There are no Kansas cases directly on point, but cases from other jurisdictions have addressed the issue of visitation when the noncustodial parent is incarcerated.

In *M.L.B. v. W.R.B.*, 457 S.W.2d 465, 467 (Mo. App. 1970), the Missouri Court of Appeals determined that the mere fact of incarceration is not enough to foreclose a father from any access to, or visitation with, his children.

In *Vaughan v. Merritt*, 672 S.W.2d 187, 188 (Mo. App. 1984), the same court, however, refused to reverse a lower court decision denying visitation even though no specific findings had been made. The appellate court presumed that the trial court made the necessary findings that visitation at the prison setting would not be in the best interests of the children.

A similar holding was made in *Garcia v. Garcia*, 425 N.E.2d 220, 221 (Ind. 1981), where the appellate court determined that the court had made a finding pursuant to an Indiana statute almost identical to K.S.A. 1987 Supp. 60-1616 that visitation

might endanger the children's physical health or significantly impair their emotional development.

In other cases which have upheld the district court's denial of prison visitation, some evidence has been presented tending to demonstrate that the children have problems as a result of visitation. In *Casper v. Casper*, 198 Neb. 615, 619, 254 N.W.2d 407 (1977), there was evidence to show that the two eldest of the five children did not want to visit, that the attitudes of the children deteriorated after the visits, and that after visitations were terminated the attitudes of the children improved. The court went on to find no abuse of discretion in limiting the father's visitation to the mother's home even though that decision effectively cut off visits with the incarcerated father.

The appeal in this case is from the denial of Terry's post-trial motion for modification of the trial court order in the divorce decree. Under K.S.A. 1987 Supp. 60-1616(c), the court must consider the best interests of the children when considering modification of a visitation order.

The trial court was obviously concerned by the effect prison visitation would have upon the two children, who were approximately four and two and one-half years old, respectively. At the time of the hearing, they had not had any contact with their father for eighteen months, so it was doubtful that they would even know him. Terry's relationship with his children was practically nonexistent and the court recognized it would be difficult to establish the relationship either then or upon his release.

The court's conclusion that it would not be in the best interests of the children to allow visitation with their incarcerated father was based on factors in addition to incarceration and was supported by the evidence. Questions relating to visitation are similar to questions relating to custody which were addressed by the Supreme Court in *Simmons v. Simmons*, 223 Kan. 639, 643, 576 P.2d 589 (1978):

"The trial court is in the most advantageous position to judge how the interests of the children may best be served. (*Parish v. Parish* [220 Kan.] at 133; and *Dalton v. Dalton*, 214 Kan. 805, 808, 522 P.2d 378.) . . . The judgment of the trial court will not be disturbed without an affirmative showing of an abuse in the exercise of discretion."

Finally, Terry contends that the refusal of visitation violates his constitutional rights, citing a number of cases relating to the recognition of protected familial rights. Terry cites no cases

which address the precise constitutional issue raised in this case—the right of an incarcerated noncustodial parent to visit with his children in a prison setting against the wishes of the custodial parent. As noted by Sandra, our Supreme Court has held that visitation rights may be conditioned upon the payment of support. *Burnworth v. Hughes*, 234 Kan. 69, 75-76, 670 P.2d 917 (1983). If the right to visitation with children were a protected constitutional right, such conditions as those in *Burnworth* could not be established.

Affirmed.