TAMILIA, Judge,
dissenting:
I respectfully but strenuously dissent. I believe the trial court approached this case in the proper sequence, determining first what was in the child’s best interest in assessing the need to proceed further. Once a cogent decision was made that it was not in the child’s best interests to be transported across the state for visitation of limited duration and questionable value, considering the child’s tender age of three years, there was no need to proceed further.
I disagree with the majority that there is a liberty interest which requires appellant’s presence under all circumstances. This presumes that, upon notice, the father is willing and able to be present. It is not uncommon for persons in distant parts of the country, who wish to contest visitation or custody, to be unable to do so personally for lack of funds or available time. Likewise, a parent incarcerated out of state could not expect to be transported to a court in Pennsylvania for a custody or visitation hearing. Undoubtedly, absent any sound basis that would preclude the child’s availability to the father, his right to a hearing to obtain visitation would be enforceable and visitation ordered. However, under these circumstances I believe the trial court must have some leeway to make a predetermination as to the reasonableness of the claim for visitation. What if the child was handicapped or in some manner incapable of long distance travel, or no person was available to transport the child or for any other of a myriad of factually sound reasons visitation was inappropriate? The most striking situation would be the case where a parent had *542 engaged in brutal sexual or physical abuse of the child requiring incarceration of the father. The Custody Act, 23 Pa.C.S. § 5301 et seq., provides explicit directions to consider criminal conduct in determining custody or visitation awards. Among the crimes which are to be considered, including abusive conduct as defined under the Protection From Abuse Act, 23 Pa.C.S. § 6101 et seq., are criminal homicide, kidnapping, unlawful restraint, rape, statutory rape, involuntary deviate sexual intercourse, indecent assault, incest, endangering welfare of children, prostitution and sexual abuse of children, pursuant to section 5303(b). To force the child to endure visitation or to even be present at hearings to test the father’s right, when many of those offenses are implicated, would inflict additional trauma on an already permanently damaged personality. Trial courts should be able to have a predetermination hearing before the process goes further. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The incarceration of the father, and his lack of capacity to exercise his rights to the extent of a person not so restrained, must be considered in relationship to the frivolousness of the demand.
Violation of the laws with its resulting confinement subsumes very serious restrictions on the freedom to do many things and to exercise many rights, the least of which is to have a normal relationship with one’s family. If the right to retain that relationship was fundamentally irrevocable, we would require prisons to provide condominium-like resources to enable the family to retain at least a quasi-normal relationship between the inmate and his/her family. Women with children born in prison are separated from them and not all are guaranteed the access that appellant demands here. Nothing could be more important for an appellant incarcerated for murder or any other crime, who elects to defend himself pro se on appeal, than to be present to argue his case in court. This case has been appealed pro se and the appellant is not entitled to be present in court to argue his appeal. Yet we deny this right although the Constitution guarantees every defendant the right to be his own counsel. If the situation were otherwise, the highways and byways of the *543 Commonwealth would be clogged with inmates filing petitions for visitation or regarding other family matters to the extent that the critically burdened sheriffs’ departments and local restraining facilities would face collapse. Prisoners will do anything possible to obtain even a brief respite from the ardors, boredom and pressures of long-term confinement.
The case most frequently cited to clarify due process issues as they relate to state intervention or court and governmental policies relating to hearings and due process is Mathews, supra. The test for purposes of determining the constitutional adequacy of a proceeding in relation to due process generally requires consideration of three distinct factors: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Another important factor in assessing the impact of official action on the right is the possible length of deprivation of benefits to the individual. While Mathews involved administrative hearings, the circumstances of this case lend themselves to a similar consideration. There, the United States Supreme Court stated:
The judicial model of an evidentiary hearing is neither a required, nor even the most effective method of decision making in all circumstances. The essence of due process is the requirement that ‘a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.’ All that is necessary is that procedures be tailored, in light of the decision to be made, to ‘the capacities of those who are to be heard,’ to insure that they are given a meaningful opportunity to present their case.
Id. at 348-349, 96 S.Ct. at 909, 47 L.Ed.2d at 41 (citations omitted). This could be accomplished by briefs filed by appellant, as suggested in the majority, and/or appointment of counsel to represent him preliminarily. This process does not rule out subsequent evidentiary hearings and judicial review before the claim becomes final.
*544 The majority cites leading cases which deal with the rights of parents to obtain visitation and custody of their children, all of which are within the context of normal family relationships or in dealings with state agencies attempting to limit the rights of parents who are not incarcerated. The situation of this case is unique and is not within the frame of reference posed in those cases. Indeed, courts in other jurisdictions have considered visitation rights of prisoners and have ruled both ways. See Matter of Marriage of Brewer, 13 Kan.App.2d 44, 760 P.2d 1225 (1988) (visitation denied; father in prison), but see McCurdy v. McCurdy, 173 Ind.App. 437, 363 N.E.2d 1298 (1977) (allowing visitation to a father in prison).
Where it appears that the demand for visitation would unequivocally inflict harm on the child, be impermissible because of the father’s crimes or financially infeasible for the other parent, which can be predetermined in a preliminary proceeding, I believe the demand for presence at a hearing is not one that is invariably required.
I would, therefore, affirm the Order of the trial court.