1997 OK 91

**Sonny L. HARMON, Appellant,**

v.

**Turenia G. HARMON, Appellee.**

No. 84832.

Supreme Court of Oklahoma.

July 8, 1997.

---

Sonny L. Harmon, pro se.

Paul W. Austin and Ruth Furman Castillo of Legal Aid of Western Oklahoma, Inc., Norman, for Appellee.

LAVENDER, Justice.

¶ 1 The dispositive issue in this appeal is whether the rights of Sonny L. Harmon (husband), an incarcerated prison inmate and a party to a divorce suit, were violated by the trial court's conducting the trial of the matter in husband's absence. In that husband's absence was due to his incarceration and he adequately requested to be present at the trial, we hold it was error to proceed with the trial without making some type of arrangement(s) for husband's participation because he had constitutional and statutory rights to an opportunity to be heard at the trial.

## PART I. FACTS AND PROCEDURAL HISTORY.[1]

¶ 2 In February 1993, husband was allowed to proceed *in forma pauperis* and he instituted a petition for divorce against Turenia G. Harmon (wife). The petition set out the parties had a minor child who had been

---

1. Generally, we discuss only those matters we consider necessary to an appropriate disposition of the appeal.

born during the marriage on October 18, 1991 and that husband was incarcerated in an Oklahoma Department of Correction's penal institution.[2] About two weeks after suit was filed, husband filed in the trial court an application for a writ of habeas corpus ad testificandum. The form application was left blank as to the date and time of the hearing at which he wanted to be present to testify. A letter to husband from a deputy court clerk dated the same day his application was filed essentially informs him, no writ of habeas corpus ad testificandum was issued because no date for hearing had then been set.

¶ 3 In March of 1993 wife filed an answer and a counterclaim for divorce. After both parties filed for temporary and/or restraining orders, a temporary order was issued by the judge then handling the case in April, which basically prohibited both parties from selling or destroying any of the personal property of the marriage and maintained the status quo as to other issues raised by the parties, pending a rescheduled hearing date to coincide with the date in which husband would be present in court.

¶ 4 Over a year transpired with no apparent activity in the case—until May 1994, when husband filed a motion to proceed. The motion sought to set the matter for hearing and stated that husband was "ready for hearing, and to be brought fourth (sic) as per application for writ of habeas corpus and testificandum filed in … February … 1993." In June 1994 husband's motion to proceed was granted by a new trial judge then handling the case, the Honorable W. Dean Hart, Jr., and a hearing was set for November 11, 1994.

¶ 5 In July 1994 husband filed an application for citation of direct contempt against wife, which alleged wife had violated a previous order issued in the case by selling, encumbering and concealing certain property covered by the earlier order. Husband requested the contempt matter be set for hearing as soon as possible and that he "be brought fourth (sic) … [to] present [e]vidence as to the selling and encumbering …" he claimed was in violation of the earlier court order. In September 1994 the November 11, 1994 hearing date was reset for January 6, 1995. In October 1994 husband filed a motion for appointment of counsel, noting he was proceeding *pro se* and he had been granted *in forma pauperis* status by leave of court.

¶ 6 On November 17, 1994 a new development occurred when husband filed a motion to dismiss without prejudice. The motion essentially asked to dismiss husband's divorce case against wife in its entirety. The reasons given were that husband believed there was a chance of reconciliation between the parties, wife was willing to return certain property to him and she was agreeable to allowing visitation with their minor son. On December 2, 1994 Judge Hart sustained husband's motion to dismiss—and his divorce petition and related motions were dismissed. His motion for appointment of counsel was denied and wife's counterclaim for divorce was set for trial on January 6, 1995.

¶ 7 Two weeks later, on December 16, 1994, husband filed a petition for Judge Hart to disqualify from the case and he moved for reinstatement of his divorce suit. Boiled down, husband claimed bias on the part of Judge Hart on two bases. One, purported statements made by the judge on December 2 when hearing husband's motion to dismiss and for appointment of counsel, showed bias. Two, husband claimed certain rulings from this Court and the Oklahoma Court of Criminal Appeals in other, separate civil and criminal cases, respectively, reversing orders and/or remanding matters to Judge Hart that he was apparently handling as trial

---

**2.** We are not certain for what crime(s) husband is currently serving a term of imprisonment. In one of his submissions he mentions auto theft. Legal research has revealed a published opinion of the Oklahoma Court of Criminal Appeals, *Harmon v. State*, 748 P.2d 992 (Okla.Crim.App. 1988), an opinion affirming convictions—apparently of husband—for larceny of an automobile and attempted larceny of an automobile (both after former conviction of a felony) emanating from Cleveland County. The *Harmon* opinion indicates sentences of fifteen (15) years imprisonment were received on each conviction, the sentences to run consecutively. At least one of husband's submissions to this Court also mentions another criminal case, this one apparently originating in McClain County.

judge, caused the judge to be prejudiced against him. Husband also asserted in his December 16 submission his inability to attend the December 2 hearing because of his incarceration, but he had sent his mother on his behalf to orally request he be allowed to withdraw his motion to dismiss his divorce suit. Basically, husband contended the only reason he had filed his motion to dismiss his divorce case against his wife was based on an agreement with her that she would also withdraw her counterclaim for divorce to allow a chance for reconciliation. He also basically averred he only learned two days before the December 2 hearing on his motion to dismiss that his wife had tricked him because she really had no intention of withdrawing her counterclaim. The December 16 submission in sum, asked for disqualification of Judge Hart and reinstatement of his divorce action in its entirety.

¶ 8 The divorce trial/hearing was held on January 6, 1995 in husband's absence. A court minute signed by Judge Hart reflects that a witness was sworn and evidence heard. The court minute also shows that husband's motions to disqualify the trial judge and to reinstate his divorce suit were denied. The divorce decree journal entry filed the same date reflects husband's failure to appear, that he had notice of the hearing and that he was wholly in default. The decree goes on to, among other things: grant wife's counterclaim for divorce; give custody of the party's minor child to wife; deny husband all visitation with the child during the period of his imprisonment; make a property division; and order husband to pay an amount of child

support to begin ninety (90) days after his release from incarceration.

¶ 9 Husband appealed.[3] The appeal was assigned to the Court of Civil Appeals (COCA) and an opinion issued which affirmed the trial court judgment. One issue raised by husband and rejected by the COCA was that reversible error had occurred because husband had been denied an opportunity to be heard in the trial court. We previously granted certiorari and now hold reversible error occurred because husband was denied a meaningful opportunity to be heard.

## PART II. ANALYSIS.

¶ 10 The case of *Johnson v. Scott,* 1985 OK 50, 702 P.2d 56, involved a trial court dismissal of a prison inmate's small claims' action for failure of the inmate to appear at the hearing on the case. The inmate had filed for a writ of habeas corpus ad testificandum requesting the district court to require his warden to bring him to the small claims' hearing. Recognizing the inmate had constitutional rights to due process and access to the courts, this Court held the trial judge abused his discretion by failing to order the inmate into court to present his claim or to allow him to present the claim either by deposition upon written questions, by telephone or upon oral examination recorded by other than stenographic means. In other words, the inmate had been denied a meaningful opportunity to be heard in the presentation of his small claims' action by failure to bring him to court to present his claim or to make some type of alternative arrange-

---

3. In actuality the instant matter was not initiated as an appeal from the January 6, 1995 trial court judgment, but it developed into such an appeal in the following manner. Failing to obtain a ruling from Judge Hart on his motion to disqualify the trial judge and to reinstate his divorce suit prior to the January 6, 1995 trial date, husband filed in this Court on December 30, 1994, an application for writ of mandamus, for disqualification of the trial judge and for reinstatement of his divorce suit. He also requested a stay of the hearing set for January 6 and to appoint counsel to represent him. On January 4, 1995 an Order issued from this Court calling for a response to husband's submissions by January 20, 1995, but no stay order was issued by this Court. The matter proceeded to trial in the trial court on January 6.

On January 31, 1995 a letter from husband dated January 19, 1995 to then Chief Justice Wilson was filed of record in this appeal. In part, the letter in substance claimed error by the trial court's conducting the divorce trial in his absence and without giving husband an opportunity to be heard and requested that it be considered as a supplement to his pending mandamus application. After certain responses were called for, on March 13, 1995 this Court issued an Order which ruled we would treat husband's January 19 letter as a petition in error and which granted him leave to file an amended petition in error in accordance with appropriate rules. Husband filed an amended petition in error and the matter proceeded as an appeal from the January 6, 1995 judgment of the trial court.

ment(s) for presentation of the claim. *See also Harris v. State ex rel. Macy*, 1992 OK 6, 825 P.2d 1320 (trial court may not decline to hear and adjudicate a prisoner's civil suit due to the inmate's non-appearance at a court hearing).

■ ¶ 11 Although husband's divorce suit was not dismissed for his failure to appear at any hearing, it is plain that husband made timely request to be present at the hearing of the divorce case when it finally came on for trial. It is also plain that the request(s) were either ignored by the trial judge or can be deemed to have been denied by the lower court because no arrangement(s) were effectuated for husband's participation at the January 6, 1995 hearing. In our opinion, the view of the COCA that it cannot be considered an abuse of discretion to deny the application for writ of habeas corpus ad testificandum because it was vague and indefinite, is erroneous. The COCA held this view based on a determination the application was left blank as to the date and time of the hearing at which husband wanted to be present to testify. This view is wrong because it ignores the fact no hearing date had been set in the matter when the application was filed in the case and it fails to consider husband's express request made in his May 1994 motion to proceed, to be brought to court for hearing in conformity with his earlier filed application for writ of habeas corpus ad testificandum.

■ ¶ 12 The COCA was also incorrect in apparently ruling that husband's application was somehow deficient because it failed to contain strict proof of the materiality of his testimony and the necessity of his attendance, citing *Long v. State*, 561 P.2d 991 (Okla.Crim.App.1977). To us, some testimony from husband would plainly be material— at a minimum concerning the visitation issues that were before the trial court. In fact, when the issue of visitation with a minor child is involved in a divorce case, the parties to the case have been granted a statutory right to notice and an opportunity to be heard. 43 O.S.1991, § 506. Section 506 is part of the Uniform Child Custody Jurisdiction Act (Act), 43 O.S.1991, § 501 et seq., as amended. The definition section of the Act

expressly includes trial court decrees concerning parental visitation with the non-custodial parent [43 O.S.1991, § 504(1)–(4) ].

■ ¶ 13 Even if we could assume husband's own testimony would not have been material to any issue in the divorce case, the manner in which this matter was handled in the trial court deprived him of a meaningful opportunity to respond to any evidence actually presented at the January 6, 1995 hearing. Where a judicial ruling turns on questions of fact and evidence is utilized to prove certain facts, such evidence must normally be disclosed to a party litigant so that he/she has an opportunity to test the evidence and show it is untrue. *Malone v. Malone*, 591 P.2d 296, 298 (Okla.1979). Thus, without making some type of arrangement(s) for husband's participation at the January 6 hearing, he was not only denied a meaningful opportunity to present evidence or testimony on his own behalf, he had no opportunity to cross-examine or confront the evidence that was actually presented on the issues involved in the case.

■ ¶ 14 Furthermore, this Court has ruled that the natural right of a divorced parent to visit his/her minor child should not be taken away unless the evidence shows the parent has forfeited this right or the exercise of it would be detrimental to the child's welfare. *In Re McMenamin*, 310 P.2d 381 (Okla.1957). Only in exceptional cases should a parent be denied the right to visit their minor child after a divorce. *Clark v. Clark*, 177 Okla. 542, 61 P.2d 28 (1936). Although, in our view, a parent has no absolute right to visitation with a minor child in a correctional facility, each case involving visitation issue(s) must be made on the factual situation involved on a case-by-case basis, always keeping in mind the paramount importance of what is in the best interests of the child. Our statutory law [43 O.S.Supp. 1996, § 112(C) ] is quite specific in setting out the legislative policy of providing a modicum of protection to a non-custodial parent's continuing contact with his/her minor child(ren). Section 112(C)(1) provides:

C. 1. When it is in the best interests of a minor unmarried child, the court shall:

a. assure children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and

b. encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.

¶ 15 Other courts have recognized that in situations involving questions of the potentiality for visitation with a minor child where a parent is incarcerated, the primary concern should be the best interests of the child. *Matter of Marriage of Brewer*, 13 Kan.App.2d 44, 760 P.2d 1225 (1988); *Nielsen v. Nielsen*, 217 Neb. 34, 348 N.W.2d 416 (1984); *Casper v. Casper*, 198 Neb. 615, 254 N.W.2d 407 (1977); *Etter v. Rose*, 454 Pa.Super. 138, 684 A.2d 1092 (1996). *Etter* set out, at least, some of the factors to be considered in deciding a question of visitation when the parent is incarcerated: age of the child; distance and hardship to the child in traveling to the visitation site; the type of supervision at the visit; identification of the person(s) transporting the child and by what means; the effect on the child both physically and emotionally; whether the parent has and does exhibit a genuine interest in the child; and whether reasonable contacts were maintained in the past. *Id.* 684 A.2d at 1093. Of course, another consideration would be the nature of the criminal conduct which culminated in the parent's incarceration.

¶ 16 As can be seen, the above factors, to a large degree, involve evaluation of factual matters. Husband was entitled to some type of meaningful opportunity to present his side as to what would be in the best interests of the parties' minor child, as well as on the other issues that might be involved in this divorce case. In that the trial court denied husband such a meaningful opportunity to be heard we hold reversible error occurred in the lower tribunal.[4]

¶ 17 Although we must reverse the trial court judgment of January 6, 1995, we do so in all respects, except as to the granting of wife's counterclaim for divorce. As noted in PART I above, husband initiated this divorce suit in the trial court and currently seeks to reinstate his claim to divorce wife. We, therefore, can see no harmful error in upholding the trial court's granting of a divorce based on the counterclaim as it concerns the parties' status and the dissolution of the marriage.[5]

¶ 18 The Court of Civil Appeals' opinion is **VACATED**. The trial court judgment is **REVERSED IN PART AND AFFIRMED IN PART**, and this matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

¶ 19 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, OPALA and ALMA WILSON, JJ., concur.

¶ 20 SIMMS, HARGRAVE and WATT, JJ., dissent.

---

4. We are not alone in holding that an inmate's right to a meaningful opportunity to be heard has been violated by failure of a trial court to make arrangement(s) for the inmate's participation in a domestic relation-related proceeding involving an issue of visitation with a minor child. Courts from other jurisdictions have also held that failure to make accommodations for some sort of participation by an inmate in such proceedings violated the inmate's due process rights or constituted reversible error. *Wolfe v. Wolfe*, 899 P.2d 46 (Wyo.1995); *State ex rel. Juvenile Department of Multnomah County v. Clampitt*, 18 Or. App. 12, 523 P.2d 594 (1974).

5. We note that husband's claims for disqualification of the trial judge are rendered moot because Judge Hart is no longer a judge of the district court. *See* 1997–1998 JUDICIAL DIRECTORY, a Joint Project of the Oklahoma Supreme Court

and the Oklahoma Bar Association's Public Information Committee. Finally, we note that husband, in one of his submissions to this Court requested the appointment of counsel. We deny the request. The instant matter does not involve the potential for the termination of husband's parental rights concerning the minor child of the marriage, i.e. a situation where this Court has generally indicated a right to counsel for indigent parents exists. *See e.g. Matter of Chad S.*, 580 P.2d 983 (Okla.1978). We do not believe husband has a constitutionally protected right to counsel in this divorce case merely because it involves property issues and issues concerning custody/visitation with a minor child. *See Haller v. Haller*, 168 Mich.App. 198, 423 N.W.2d 617 (1988) (no due process right to counsel in divorce case merely because issues therein concern custody of minor child).