HILFIGER v. HILFIGER
2023 OK CIV APP 15
Case Number: 120232
Decided: 04/14/2023
Mandate Issued: 05/11/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2023 OK CIV APP 15, __ P.3d __

 

IN RE THE MARRIAGE OF:

JEMELLIA HILFIGER, Petitioner/Appellant,
v.
JAMES HILFIGER, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE BETHANY STANLEY, TRIAL JUDGE

AFFIRMED

Charles O. Schem, HESTER SCHEM DIONISIO & DIDIER, Edmond, Oklahoma, for Petitioner/Appellant

Daniel P. Buckelew, Stacey R. Steiner, BUCKELEW LAW, Oklahoma City, Oklahoma, for Respondent/Appellee

DEBORAH B. BARNES, VICE-CHIEF JUDGE:

¶1 In this post-dissolution of marriage proceeding involving issues related to child custody modification, Jemellia Hilfiger (Mother) appeals from an order denying her motion for new trial. Based on our review, we affirm.

BACKGROUND

¶2 Mother and James Hilfiger (Father) were divorced by consent decree filed in April 2018. Mother was awarded custody of the parties' minor child, who was born in January 2007. Father was awarded visitation. Among other things, the decree provides that Father pay Mother $166,140 in support alimony at a rate of $2,769 per month for sixty months, and $1,882.01 per month in child support.

¶3 Father filed a Motion to Enforce and Request for Counseling in February 2019, asserting, among other things, that he had not had visitation with the minor child since August 2018, that he had made requests for visitation but visitation "has not been facilitated," and that he "desires to have a happy, healthy relationship with his [child]." He stated he "believes that a component of this may be that [Mother] does not believe there is an importance to this relationship between [Father] and [child], or that there may be an issue of alienation involved." Father also sought an order that he be allowed to participate in counseling with child.

¶4 In an order filed in June 2019, the district court found, among other things, that child and Father shall attend counseling "2-4 times per month."

¶5 Father subsequently filed an Application for Contempt Citation, asserting, among other things, that "[Mother] has not allowed [him] to visit his [child] pursuant to" the decree, and that Mother had failed to comply with the order pertaining to counseling and had "unilaterally decided to cease providing the child to counseling." Father stated he "only sought legal intervention when it became apparent that [Mother] would not adhere to the Order of the Court."

¶6 In August 2019, Mother filed a motion to modify in which she asserted, among other things, that a substantial and permanent change of condition had occurred in that the child "is now 12 years old and is mature enough to voice her preference in this case," and "[t]he child expresses on a regular basis that she does not want to visit with [Father]."

¶7 Also in August 2019, a Guardian ad Litem (GAL) was appointed on behalf of the child.

¶8 In October 2019, Father filed a motion to modify and an objection to Mother's motion to modify. Father asserted the following changes, among others: During the marriage and following the divorce until August 2018, Father "possessed a normal healthy relationship with [child]," but since that time Mother "has conducted a pattern of parental alienation which has adversely affected the father-daughter bond"; Mother "fails to facilitate visitation" and has "taken measures to block [Father] from having communication with [the child]"; Mother continues to violate court orders relevant to visitation and counseling; and Mother "physically assaulted [Father] in the presence of child." Father requested that the court modify custody by awarding custody of the child to him with reasonable visitation to Mother.

¶9 As stated by the district court at the trial ultimately held in June 2021, "this matter was continued more times than I can count between 2019 and all through 2020." As summarized by Mother in her appellate brief, the district court

entered a Scheduling Order, requiring mediation to be completed by December 6, 2019, scheduling a resolution conference on December 16, 2019, and indicating that a hearing on the merits would be set at the resolution conference if necessary. That resolution conference was continued to January 28, 2020. On that date, the matter was set for hearing on the merits May 14, 2020, and May 15, 2020. On or about May 4, 2020, the previously scheduled hearing on the merits was stricken and rescheduled to July 30, 2020, and July 31, 2020. . . . [T]hose trial dates were apparently stricken.

Thereafter, the case was administratively reassigned to a different judge on or about February 5, 2021, and a hearing on the merits was then rescheduled to May 17, 2021.

¶10 On May 18, 2021, counsel for Mother filed a motion to withdraw as counsel in which she asserted she "is not able to represent [Mother] in this case and have (sic) come to an impasse." Trial was set for May 25, 2021, at which the parties appeared. Although no transcript of the May 2021 proceeding is provided on appeal, the parties agree that, on this date, the district court granted Mother's counsel's request to withdraw and "reset the hearing on the merits to begin on June 23, 2021."

¶11 On June 23, 2021, at the beginning of trial, Mother requested another continuance in order to hire counsel, a request which was denied by the court after observing that the parties had "set today's court date by agreement" at the May 25 proceeding, and "that everyone was in agreement for this to be the day that we would handle the Motions to Modify . . . ." Counsel for Father also objected to Mother's motion to continue, stating a continuance "would not be in the child's best interest, and it's prejudicial to [Father] to continue to allow [Mother] to have continuances and change counsel." The GAL also objected, stating that resolution of the motions to modify had already been postponed for long stretches of time and

[t]he child is in a lot of distress about what is happening in Court, and I do believe it's in the best interest of the child to move forward today and have a hearing, which the Court ordered and gave everyone ample notice and opportunity that this hearing was going to happen today.

¶12 In response, Mother pointed to 12 O.S. Supp. 2020 (now 2021) § 2005.2(C), which provides, in part, that "[t]he order allowing withdrawal shall notify the unrepresented party that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal[.]" Based on this statute, she argued trial could not be held within thirty days of the order of withdrawal. Because it had been twenty-nine days since the order allowing withdrawal, Mother asserted a continuance was required. Mother also asserted she had attempted to make an appointment with an attorney, but acknowledged she had yet to make an appointment with an attorney. She requested additional time to make an appointment and "get them up to speed on all of the records and all of the motions and hearings that we have."

¶13 After denying Mother's motion, trial commenced, and, over the course of three days, six witnesses testified. The court then took the matter under advisement.

¶14 In its Journal Entry of Order of Modification, the district court, pertinent to this appeal, denied Mother's motion to modify, and sustained Father's motion to modify. The court explained it allowed the child to express a preference, and that it considered that preference, but found that following the child's preference in this case would be contrary to the minor's best interest. The court further stated that Father

met his burden under the Gibbons v. Gibbons, 1968 OK 7743 O.S. § 112

The court awarded Father sole legal and physical custody of the child, and found Mother's visitation with the child "shall be supervised at this time until she completes a psychological evaluation," an evaluation which was previously ordered but never undertaken by Mother.

¶15 Mother filed a Motion for New Trial "pursuant to 12 O.S. § 651

¶16 Mother appeals.

STANDARD OF REVIEW

¶17 "Motions for New Trial are directed to the sound discretion of the trial court, and the court's ruling thereon will not be disturbed on appeal in the absence of an abuse of that discretion." Record v. Record, 1991 OK 85816 P.2d 1139See also Hull v. Hull, 2000 OK CIV APP 8811 P.3d 222

¶18 Likewise, "[w]e review a grant or refusal of a motion to continue for abuse of discretion." In re J.L.O., 2018 OK 77428 P.3d 881See 12 O.S. 2021 § 667Anderson v. Chapman, 1960 OK 235356 P.2d 1072

¶19 Similarly, "we review custody modification decisions for abuse of discretion." Marsh v. Marsh, 2007 OK CIV APP 60165 P.3d 358

[T]he appropriate standard of review in a custody modification is abuse of discretion. Nevertheless, before we can presume the trial court's decision correct, it must be supported by the record. A clear abuse of discretion occurs when a challenged decision is against or unjustified by reason and evidence. Further, even where the trial court is vested with broad discretionary powers, its order will be reversed if it erred with respect to a pure, simple and unmixed question of law.

Casey v. Casey, 2002 OK 7058 P.3d 763See also Christian v. Gray, 2003 OK 1065 P.3d 591Curry v. Streater, 2009 OK 5213 P.3d 550Rowe v. Rowe, 2009 OK 66218 P.3d 887

ANALYSIS

I. Motion for Continuance

¶20 Mother asserts the district court's denial of her request for a continuance "constituted an abuse of discretion and denied [Mother] her right to a fair trial."

In civil actions, the court may grant a motion to withdraw where there is no successor counsel only if the withdrawing attorney clearly states in the body of the motion the name and address of the party. The order allowing withdrawal shall notify the unrepresented party that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal and that a failure of the party to prosecute or defend the case may result in dismissal of the case without prejudice or a default judgment against the party. If no entry of appearance is filed within thirty (30) days from the date of the order permitting withdrawal, then the unrepresented party, other than a corporation, is deemed to be representing himself or herself and acting pro se. In all cases, counsel seeking to withdraw shall advise the court if the case is currently set for motion docket, pretrial conference, or trial.

¶21 Mother asserts the district court, in denying her request to continue and proceeding with trial twenty-nine days after the order of withdrawal, "did not follow the plain language" of § 2005.2(C). She asserts:

It appears clear from the plain language of that statute that a litigant should be allowed at least thirty (30) days from the date of an order allowing withdrawal to either decide to proceed pro se or hire counsel. The failure of the trial court to follow this explicit language constitutes an irregularity in the proceedings which justifies a new trial. . . . It seems reasonable to assume that a non-attorney pro se litigant would interpret that statute to allow her sufficient time to obtain an attorney.

¶22 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23415 P.3d 521Id. (citations omitted). "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Keating v. Edmondson, 2001 OK 11037 P.3d 882Odom, ¶ 18, 415 P.3d at 528 (citations omitted). However, courts "may not change, modify, amend, or restrict the plain language of a statute under the guise of statutory interpretation." Okla. Alcoholic Beverage Control Bd. v. Cent. Liquor Co., 1966 OK 243421 P.2d 244

When a court is called on to interpret a statute, the court has no authority to rewrite the enactment merely because it does not comport with the court's view of prudent public policy. Also, the wisdom of choices made within the Legislature's law-making sphere are not our concern, because those choices -- absent constitutional or other recognized infirmity -- rightly lie within the legislative domain.

Head v. McCracken, 2004 OK 84102 P.3d 670

¶23 The plain language of § 2005.2(C) contains the following mandatory requirements: (i) that a motion to withdraw can be granted "where there is no successor counsel only if the withdrawing attorney clearly states in the body of the motion the name and address of the party"; (ii) that a withdrawing attorney shall notify the former client "that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal"; (iii) "[i]f no entry of appearance is filed within thirty (30) days from the date of the order permitting withdrawal, then the unrepresented party, other than a corporation, is deemed to be representing himself or herself and acting pro se"; (iv) that a withdrawing attorney shall notify the former client "that a failure of the party to prosecute or defend the case may result in dismissal of the case without prejudice or a default judgment against the party"; and (v) that a withdrawing attorney "shall advise the court if the case is currently set for motion docket, pretrial conference, or trial." Contrary to Mother's argument, § 2005.2(C) does not contain any explicit requirement that a hearing or trial not be held within thirty days of an order of withdrawal.

¶24 However, the question remains whether, in order to allow the unrepresented party to obtain counsel, it is plainly deducible that an implied requirement exists that no proceedings be held for thirty days. After all, "[s]tatutes must be read to render every part operative, and to avoid rendering it superfluous or useless." Odom, ¶ 36, 415 P.3d at 532 (citations omitted). The rule in this regard has been articulated as follows:

Only when the circumstances clearly indicate that in enacting the statute the legislature has overlooked something will this court apply rules of statutory construction in an effort to clarify and make sensible an act's purview. However, [t]o enable [a] court to insert in a statute omitted words or read it in (sic) different words from those found in it, the intent thus to have it read must be plainly deducible from other parts of the statute.

Wylie v. Chesser, 2007 OK 81173 P.3d 64

¶25 The intent to prohibit the holding of a trial (or other proceeding) within a specific time of the filing of an order of withdrawal is not plainly deducible from the statute. The statute reveals a clear intent on the part of the Legislature that certain information be provided to the unrepresented party and the court; however, as the present case attests, these and the other mandatory terms of the statute set forth above are not rendered superfluous or inoperative -- certainly not here or in every conceivable instance -- by the holding of a hearing, conference or trial within thirty days. Indeed, the statutory language appears to indicate the opposite: that the Legislature did not intend to revoke the flexibility a district court might otherwise have in scheduling proceedings in a case.

¶26 Mother cites to Crussell v. Osborn, 1979 OK CIV APP 11592 P.2d 984Crussell are plainly distinguishable in that they involved an order of withdrawal "on the same day" that the trial was to be held, a failure on the part of the defendant to appear, a default judgment against the defendant, and a refusal on the part of the district court to vacate the default judgment, we do not disagree with Mother's assertion that an unrepresented party "should have time" to obtain counsel.Crussell -- implicitly creates a specific, mandatory and across-the-board time restriction on the holding of proceedings, as proposed by Mother. While the Oklahoma Supreme Court has "recognize[d] the possibility that a statute may express a mandatory requirement in the absence of express language stating that the requirement is mandatory," In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23326 P.3d 496

¶27 Nevertheless, even if such a mandatory requirement is deemed to be impliedly embedded in the statute, Mother waived that requirement in the present case. "[A] waiver occurs where there is a voluntary and intentional relinquishment of a known right," and "a right may be waived whether conferred by law or contract." Perry v. Perry, 1976 OK 57551 P.2d 256House v. Town of Dickson, 2007 OK 57193 P.3d 964See Spicer's, Inc. v. Burk, 1953 OK 103261 P.2d 222See also Higgins v. State, 1973 OK CR 59506 P.2d 575

¶28 Mother, who has no right to counsel in this case,

¶29 Although we conclude Mother's argument is not supported by 12 O.S. § 2005.2(C), we must nevertheless determine whether, under the facts and circumstances of the present case, the district court's denial of Mother's motion to continue is clearly against the evidence. See Curry, ¶ 1, 213 P.3d at 552 ("Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law."). The Oklahoma Supreme Court has "also held that the applicable chief test is 'whether the grant or denial of the motion operates in the furtherance of justice.'" In re J.L.O., ¶ 20, 428 P.3d at 888 (citation omitted). In this regard, a number of facts weigh in favor of the district court's decision. First, it remains relevant to our analysis that Mother agreed at the hearing twenty-nine days before trial to proceed with trial on June 23, 2021, and she failed to seek the continuance in question until the day of trial.

¶30 Second, Mother acknowledged at trial that she would be unable to hire an attorney, much less have an attorney prepared, by the following day (i.e., the final day of her proposed mandatory thirty-day window).

¶31 Third, as Mother acknowledged at trial, the district court had to take into account not only the interests of Mother, but also of Father and the child.

¶32 Fourth, the case had already been postponed repeatedly, partly as a result of Mother's actions. As stated by the district court, "this matter was continued more times than I can count between 2019 and all through 2020."

¶33 Fifth and finally, Mother had demonstrated a willingness to disobey orders of the district court -- such as undertaking a psychological evaluation, and regarding allowing visitation or the details of Father's visitation or counseling with the child -- and the district court may have justifiably viewed Mother's request as dilatory in nature.

¶34 On the other hand, it may have been ideal for Mother to have been represented by an attorney at trial. However, as above stated, no right to counsel exists here. Our review of all the facts and circumstances reveals the district court's decision is not clearly against the evidence.

¶35 The Oklahoma Supreme Court has cautioned:

The prompt trial and determination of cases in court is most commendable, but when a trial is forced with such dispatch as to result in depriving an interested party of reasonable opportunity to prepare for trial, and secure witnesses; and the whole circumstances are such as to convince that there was an abuse of judicial discretion, it is the duty of this court to reverse[.]

Whether the ruling of a court on a motion for continuance is within the proper exercise of its sound discretion usually depends on the facts of the particular case, the chief test being whether the grant or denial of the motion operates in the furtherance of justice.

Bookout v. Great Plains Reg'l Med. Ctr., 1997 OK 38939 P.2d 1131

¶36 It is clear that this is not a circumstance in which trial was forced with such dispatch as to result in depriving Mother of a reasonable opportunity to prepare for trial; rather, under the facts of this particular case, the denial of Mother's continuance request operated in the furtherance of justice and is not clearly against the evidence. Consequently, the district court did not abuse its discretion in denying the motion to continue.

II. GAL Report

¶37 Mother asserts "the fact [she] never received a copy of the [GAL] report[] constitutes an abuse of discretion and a denial of [her] due process rights."

III. Preference of the Child

¶38 In her third proposition, Mother appears to argue that although the child expressed a preference to remain with Mother, the court may have improperly disregarded that preference as a result of the GAL testifying "the child was living with extreme mental health issues" and testifying "that different counselors had concerns" regarding the child's mental health or the mental health of Mother and its effect on the child. Mother argues "[i]t was an error for the Court to allow . . . testimony regarding an undiagnosed mental illness" by the GAL, who is a "non-expert."

¶39 The district court was not required to follow the child's preference, regardless of the child's age. Title 43 O.S. 2021 § 113(A)

If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits to or periods of visitation. Interviewing the child does not diminish the discretion of the court in determining the best interest of the child. The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation.

(Emphasis added.)

¶40 Moreover, although Mother asserts "[i]t was an error for the Court to allow . . . testimony regarding an undiagnosed mental illness," Mother does not assert she objected to this testimony, nor does she cite to any place in the record where such a contemporaneous objection may be found. Where no objection to the evidence appears in the record, the party has waived the objection. See Weathers v. Fulgenzi, 1994 OK 119884 P.2d 538

¶41 A review of the transcript of the GAL's testimony similarly reveals no objection.

¶42 The GAL was "appointed to objectively advocate on behalf of the child and act as an officer of the court to investigate all matters concerning the best interests of the child." Rowe, ¶ 4, 218 P.3d at 889.

¶43 Of course, this is not the only evidence presented to the court pertaining to custody. The court also heard extensive evidence from multiple witnesses regarding Mother's interference and even sabotage of Father's relationship with the child. The court heard Father's testimony regarding Mother's decline and detailed testimony regarding her physical attack of him. The GAL testified:

I think this case is unfortunately very, very sad and very, very unfortunate. I can say this is the saddest case I have ever had as a guardian ad litem. And I've done this work for 15 years. . . . We have a child who, I believe, has been manipulated due to her mother's mental health issues.

¶44 Having reviewed all the evidence presented at trial, we conclude the court's decision to not follow the child's preference in this case is not clearly against the evidence or an abuse of discretion.

CONCLUSION

¶45 We conclude the district court did not abuse its discretion in denying Mother's motion to continue and in deciding not to follow the child's preference in this case. We also find that Mother's argument pertaining to the GAL report lacks merit. Consequently, we conclude the court did not abuse its discretion in denying Mother's motion for new trial.

¶46 AFFIRMED.

WISEMAN, P.J., and HIXON, J., concur.

FOOTNOTES

pro se."

Crussell, the default judgment was entered on June 28, 1977, and the defendant was able to retain counsel within approximately two weeks, which counsel filed the motion to vacate on July 14.

Kiddie v. Kiddie, 1977 OK 69563 P.2d 139

As yet we have found no recognition by a state court of a constitutionally grounded right to appointment of counsel in a divorce proceeding. Oklahoma recognizes no absolute constitutional right to a divorce. While assistance of counsel is certainly helpful in obtaining relief, without the existence of this constitutional right, the protection of the fourteenth amendment due process and its consequent right to counsel do not emerge.

Kiddie, ¶ 17, 563 P.2d at 142. Subsequently, in Harmon v. Harmon, 1997 OK 91943 P.2d 599

The instant matter does not involve the potential for the termination of . . . parental rights concerning the minor child of the marriage, i.e. a situation where this Court has generally indicated a right to counsel for indigent parents exists. We do not believe [the parent in question] has a constitutionally protected right to counsel in this divorce case merely because it involves property issues and issues concerning custody/visitation with a minor child. See Haller v. Haller, 168 Mich. App. 198, 423 N.W.2d 617 (1988) (no due process right to counsel in divorce case merely because issues therein concern custody of minor child).

Harmon, ¶ 17 n.5, 943 P.2d at 605 n.5 (citation omitted). See also King v. King, 174 P.3d 659, 667 (Wash. 2007) (en banc) (In many "[s]tate courts that have considered the matter," including Oklahoma, "there is no right to counsel at taxpayer expense in a dissolution action.").

Cf. State ex rel. Dep't of Transp. v. Caliber Dev. Co., LLC, 2016 OK CIV APP 1365 P.3d 1067

Cf. Caliber, ¶ 21, 365 P.3d at 1074 ("[T]he Department had already sought and been granted one continuance of a previous trial setting. A second continuance would have [further] delayed the trial . . . .").

First Nat'l Bank v. Okla. Sav. & Loan Bd., 1977 OK 171569 P.2d 993See Answer Br. at 2. Regardless, "[t]he trial court is ideally situated to assess the credibility of witnesses." Childers v. Childers, 2016 OK 95382 P.3d 1020See also Bills v. Bills, 2022 OK CIV APP 27514 P.3d 485

Funnell v. Jones, 1985 OK 73737 P.2d 105

Id. (citations omitted).