Sharon L. HIGGINS, a/k/a Sharon L. Hill, a/k/a Sharon Carter, a/k/a Sharon Thompson, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16737.

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1973.

Phil Frazier, Frazier, Dyer, Pate & Hopper, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant Sharon L. Higgins, was charged, tried by a jury and convicted in the District Court of Oklahoma County, Oklahoma, in Case No. CRF–70–1086, of the offense of Obtaining Money By Means and Use of a False and Bogus Check, After Former Conviction of a Felony, and her punishment was fixed at a term of ten (10) years imprisonment, from which judgment and sentence, a timely appeal has been perfected to this Court.

On the trial, Joyce High, a co-defendant on the instant charge, testified that she had previously entered a plea of guilty and was returned from the state penitentiary in McAlester where she is serving a six-year term, to testify. She identified the appellant, Sharon Higgins, and stated that on the 9th day of April 1970 she and the appellant traveled together from Wichita, Kansas to Tulsa. She stated that before leaving Tulsa she and the appellant went to the home of one Linda Barnett, appellant's step-sister, where she removed a driver's license and medical identification card from the Linda Barnett's purse. She testified they then traveled to Tulsa in Appellant's automobile and while there, they used the identification to open a bank account in a Tulsa bank. The witness stated the identification was in the appellant's possession at this time "because it was planned and she had used it in Tulsa." (Tr. 16)

Appellant and the witness returned to Wichita and on the following day, the 10th of April, the Witness High testified she went to appellant's house and picked her up, leaving Wichita in the afternoon and arriving in Oklahoma City at approximately 3:00 p.m. She testified they proceeded to the Liberty National Bank in Oklahoma City where the Witness High opened a bank account in the name of Mrs. Sandra Parkins. She used an address and telephone number which the appellant obtained from an Oklahoma City telephone directory. She stated she obtained 20 blank checks at the bank and she and the appellant then proceeded to an Oklahoma City motel where appellant checked them in under the name of Janice Summers. Once in the room, she testified that they together made out the checks and used a check protector to place the amounts on the checks. The Witness High then identified a series of checks which contained both her handwriting and that of the appellant, including State's Exhibit No. 4 which was the check in question in the instant case written to an Oklahoma City Safeway store in the amount of One Hundred and Forty-six Dollars ($146.00) endorsed in the name Linda Barnett by, according to the Witness High, the appellant. She identified some eight checks that she and the appellant had made out in cash in the course of the day, that being the 10th of April.

The Witness High testified they spent the night at the motel and on the following day, the 11th, they checked out of the motel and passed some more checks. The witness stated approximately 15 checks were cashed and the other five were destroyed. She stated she and the appellant returned to Wichita later on the 11th and that between the two of them, the check cashing operation had netted approximately Sixteen Hundred Dollars ($1600.00).

On cross-examination, the Witness High admitted she did not personally see the appellant cash the Safeway check but that the appellant told her she had cashed that check. She testified further that she had four prior bogus check convictions plus an additional six-year concurrent term on a check cashing charge growing out of the same set of circumstances.

Linda Barnett, of Tulsa, testified she had known the appellant for approximately three or four years and that the appellant was her stepfather's daughter. She stated the appellant and another girl arrived at her home on the 9th day of April in the early afternoon and that they remained for approximately one hour. She testified further that her driver's license and medical identification disappeared from her billfold at about that time. She stated she had seen her driver's license earlier in the day and that as a result of having received a telephone call around 4:00 in the afternoon she had an occasion to go look for it, but was unable to find it. She stated no one else other than her stepfather had been in her home during that period of time and stated that the signature, Linda Barnett, appearing on the State's exhibit was not her signature and that she gave no one permission to sign her name to any checks. She testified further that the telephone call she received was in connection with the opening of a new checking account at Southeast State Bank in Tulsa.

Harold Spratt testified that on the date in question he was assistant manager of the Safeway store located at 1509 Britton Road in Oklahoma City. He identified the appellant as the individual who had cashed State's exhibit 4 on either April 10 and 11. He stated he initialed his approval on the check and that it was returned five or six days later stamped "Insufficient Funds." He testified further that an Oklahoma Driver's License was offered as identification for the cashing of this check. He stated further that he had had some conversation with the appellant with regard to the cashing of the check inasmuch as it was marked "Nursing care, private duty" and stated that the appellant said to him, "I really earned my money this week after lifting the gal around all week." (Tr. 75) He testified further that approximately one week after the check was passed, he was able to pick appellant's photograph out of a group of four.

At that point, the defense stipulated that if a witness for the Liberty National Bank were called they would identify Joyce High as the person who opened the bank account at the Liberty National Bank in the name of Sandra Parkins in the amount of Fifty Dollars ($50.00) on April 9, and further that on that same day the co-defendant, Joyce High, filled out an application to the 2135 Club using the name of Sandra Parkins and giving the address of 1715 Park Place.

Detective Sergeant Thomas A. Davis of the Wichita, Kansas Police Department identified State's Exhibit 11 as a handwriting sample taken from the appellant in June of 1966.

Earnest Smith, after first being qualified as a questioned document examiner for the Oklahoma State Bureau of Investigation, testified that he compared the handwriting samples from Wichita, Kansas with the endorsements on the State's exhibits and stated that based upon his expertise in his opinion the person who wrote the two-page handwriting exemplar was the person who endorsed the name of Linda Barnett on the back of the checks in question.

The State next called Leslie A. Wright who testified that he was an Oklahoma County Sheriff's clerk and he identified State's Exhibit 13 as a fingerprint card and fingerprints he had taken from the appellant.

Carl Cloud, after being qualified as a fingerprint technician for the State Bureau of Investigation, testified that he compared State's Exhibit 4, the Safeway check, and State's Exhibit 13, the appellant's fingerprint card, and testified that in his opinion the fingerprints were made by the same individual.

Finally, it was stipulated that if Harvey Dowdy, cashier at Liberty National Bank, were called, he would testify that the bank account in the name of Sandra Parkins, Account No. 340–6474, was opened in the amount of Fifty Dollars ($50.00). On the 10th day of April 1970, fifteen checks bearing this account number were presented to the bank and were dishonored by said

bank and no other deposits were made in that bank account.

For the defense, Rita Marie Daney testified that she is a resident of Wichita, Kansas and acquainted with the appellant since 1966. She testified that on the 10th and 11th days of April she had occasion to be in the company of the appellant in the late afternoon hours on both days and that on those two days, she assisted Mrs. Daney in moving from one home to another. She testified further she had a telephone conversation with the appellant about 10:00 in the morning on April 11. When she arrived at Mrs. Daney's house, she had her three children and her nephew, Mark, with her.

William E. Carter of Arlington Heights, Illinois testified that he is a Coleman Company salesman and has been for the past six years and that he is the appellant's brother. He testified he was at his sister's, the appellant's house on April 10 from approximately 11:30 a.m. to approximately 3:15 p.m. and that he left his son, Mark, in her care.

Rachell Wyatt Fugate, of Cheney, Kansas, testified that she is the appellant's mother and a private duty nurse. She testified she accompanied her son to the appellant's house on Friday morning, that they remained there from approximately 11:00 in the morning until 2:45 in the afternoon, and that appellant was present during that period of time. She testified further she called her and talked to her on the telephone that evening and saw her the next day. She stated her daughter was at her home around 11:00 in the morning on April 11 and that she had her children and Mark with her.

Detective Gary Caldwell of the Wichita Police Department was called as a rebuttal witness by the State, identified the appellant, and testified that on the 8th day of September 1970 he had occasion to meet the appellant at her place of employment at which time she offered to give him some information regarding the solution of a robbery in exchange for an alibi for April 9, 1970. He stated the appellant wanted him to tell Oklahoma authorities that she and Caldwell were together on April 9 during the day and during the night since she had been charged with writing checks in Oklahoma.

Next, it was stipulated that if Robert Green of the Howard Johnson's Motor Lodge were called, he would testify that his records indicate Janice Summers, giving an address of 4424 S. Bagley, Wichita, Kansas, driving a 1970 Nova automobile, Kansas license number 154666, registered in that motel on April 10, 1970 in room 373.

■ The first of five propositions advanced by appellant urges that the trial court committed error in failing to report all stages of the proceeding which appellant contends are statutorily required by 20 O.S.1971, § 106.4, and that by reason of that omission the appellant is precluded from bringing before this Court prejudicial and damaging remarks made by the State during closing arguments. We find this proposition to be without merit.

■ Initially, we hold that 20 O.S. 1971, § 106.4 which statutorily outlines the duties of court reporters, does not mandate the taking down of all testimony in all instances. The record fails to bear out appellant's contention that he requested the reporter be brought into the court to resume reporting and that the closing argument be reported. Further, the Attorney General points out, and quite correctly, that a defendant in a criminal case may waive any statutory or constitutional right either by express agreement or conduct or by such failure to insist upon it seasonably. In Re Dare, Okl.Cr., 370 P.2d 846 (1962).

■ In addition, the record is clear that counsel for the appellant, capable and experienced criminal trial lawyers, did not avail themselves of the time honored method in Oklahoma courts for the proper preservation of improper comments or arguments in the trial of a criminal case. It has long been the law in this jurisdiction that where an improper comment is made

counsel for the defendant must object to the comments at the time they are made, request to have them taken down in shorthand, move the court to exclude such remarks from consideration of the jury, and make sufficient records so that the Court of Criminal Appeals may determine whether the alleged improper remarks were actually made, and if so, whether they were invited or provoked by opposing counsel's remarks. Johnson v. State, Okl.Cr., 423 P.2d 886 (1967).

Proposition two charges error was committed in allowing the State to amend its Information instanter, following the testimony of one witness, to reflect that the complained of check was passed on April 11 rather than April 10 since the appellant had already given notice to the State that she intended to erect a defense of alibi. The record reflects the amendment was over the objection of the appellant and that thereafter the trial court overruled a motion for a continuance in order to establish a defense or adequately prepare for the defense.

Appellant cites a well settled line of authority which stands for the proposition that it is not error to allow an amendment to the Information in a matter of former substance where the same can be done without material injury to the defendant; however, in this particular case, appellant claims that there was in fact a material injury to the defendant inasmuch as the trial had already begun and the defendant had relied on the date upon the face of the Information for the purpose of alibi.

█ We find this argument devoid of merit inasmuch as appellant's alibi witnesses, apparently whom the jury chose to disbelieve, testified concerning her whereabouts on both days, the 10th and the 11th, therefore it is difficult for this court to see how the appellant could have been prejudiced in any way by the amendment to the Information.

We likewise find to be without merit, appellant's proposition three of which states the court committed error in admitting into evidence as an exhibit, a handwriting sample which contained a statement made by the appellant while in the custody of the Wichita, Kansas, Police Department, which statement tended to introduce into evidence the character of the appellant and evidence of other crimes.

Appellant's basic premise is correct in that such evidence generally is not admissible; however, in the case at bar, the record clearly reflects that the prosecutor first offered to make a copy and then cut out the objectionable portion or, in the alternative, agreed to blackout portions of the original document which would give rise to such an objection. The court then made it quite clear that the document would be admitted only for the limited purpose of the handwriting comparison and that if the document were to go to the jury, the complained of portion would be excluded from their consideration.

█ Thus there is no affirmative showing in the record that the jury ever had an opportunity to consider the exhibit, and secondly, the record reflects once the limiting instructions were placed upon the use of the exhibit, the appellant acquiesced in its admission into evidence, and actually expressed a preference for the original document rather than a copy.

In proposition four, appellant contends that the rebuttal testimony of the Wichita detective, Gary Caldwell, was improperly admitted since it tended to connect her with other crimes and was solely for the purpose of prejudicing the accused in the eyes of the jury.

█ The record reflects that Officer Caldwell went to appellant's place of employment to investigate an armed robbery which had occurred at that location and that appellant offered to give him certain information concerning that robbery. Had the sole purpose of the rebuttal testimony been to refer to the robbery and what information or interest the appellant might have, we would agree that it would be in fact improper rebuttal and perhaps even prejudicial to the appellant. However,

what makes the information proper and material as rebuttal is that the appellant herself offered the information in exchange for an alibi, a defense she had erected with the previous three witnesses. It cannot be said that testimony going directly to the appellant's defense could be considered collateral.

In the same proposition, appellant argues that the stipulated rebuttal testimony with regard to the records of the motel was also improper rebuttal and improperly admitted on the reason and for the grounds that there was no testimony prior to the improper rebuttal concerning any party named Janice Summers. However, the record clearly reflects that the co-defendant, Joyce High, testified that the appellant checked them into that motel using the name Janice Summers.

The final proposition urges that the trial court committed error in giving the jury instruction number nine which states:

"In considering the testimony of a witness who the evidence shows has heretofore been convicted of an offense, you may consider such fact of conviction as it may or may not in your judgment affect the weight or credit you will give to the testimony of such witness."

Appellant contends that this instruction called the jury's attention to certain evidence presented during the trial which tended to show and emphasize prior commissions of criminal offenses by the appellant.

The record reflects that while counsel for appellant objected to instructions number six, seven and twelve, no objection was offered insofar as instruction number nine is concerned. Further, no suggested written instructions were offered by the appellant.

The rule in this Court has long been that alleged error in the giving of an instruction will not be preserved for review on appeal where no objection is interposed to the giving of such instruction. Hover v. State, Okl.Cr., 471 P.2d 950 (1970).

The finders of the fact in this case, the jury, obviously weighed all of the facts as well as the alibi testimony and were unable to credit the alibi or find a reasonable doubt to be resolved in behalf of the appellant.

In conclusion, we note after a careful reading of the transcript herein and an examination of the original record, the brief and the authorities cited therein that the record is free of any error which would justify modification or require reversal. It appears to the contrary, that the appellant had a fair and impartial trial, that the issues were properly submitted, that the instructions fairly and correctly state the law applicable to the case, and that the verdict is supported by the evidence.

The judgment and sentence be, and the same is hereby, affirmed.

BUSSEY and BRETT, JJ., concur.