OSCN Found Document:HILFIGER v. HILFIGER

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 HILFIGER v. HILFIGER
2023 OK CIV APP 15
530 P.3d 879
Case Number: 120232
Decided: 04/14/2023
Mandate Issued: 05/11/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 15, 530 P.3d 879

 

IN RE THE MARRIAGE OF:

JEMELLIA HILFIGER, Petitioner/Appellant,
v.
JAMES HILFIGER, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE BETHANY STANLEY, TRIAL JUDGE

AFFIRMED

Charles O. Schem, HESTER SCHEM DIONISIO & DIDIER, Edmond, Oklahoma, for Petitioner/Appellant

Daniel P. Buckelew, Stacey R. Steiner, BUCKELEW LAW, Oklahoma City, Oklahoma, for Respondent/Appellee

DEBORAH B. BARNES, VICE-CHIEF JUDGE:

¶1 In this post-dissolution of marriage proceeding involving issues related to child custody modification, Jemellia Hilfiger (Mother) appeals from an order denying her motion for new trial. Based on our review, we affirm.

BACKGROUND

¶2 Mother and James Hilfiger (Father) were divorced by consent decree filed in April 2018. Mother was awarded custody of the parties' minor child, who was born in January 2007. Father was awarded visitation. Among other things, the decree provides that Father pay Mother $166,140 in support alimony at a rate of $2,769 per month for sixty months, and $1,882.01 per month in child support.

¶3 Father filed a Motion to Enforce and Request for Counseling in February 2019, asserting, among other things, that he had not had visitation with the minor child since August 2018, that he had made requests for visitation but visitation "has not been facilitated," and that he "desires to have a happy, healthy relationship with his [child]." He stated he "believes that a component of this may be that [Mother] does not believe there is an importance to this relationship between [Father] and [child], or that there may be an issue of alienation involved." Father also sought an order that he be allowed to participate in counseling with child.

¶4 In an order filed in June 2019, the district court found, among other things, that child and Father shall attend counseling "2-4 times per month."

¶5 Father subsequently filed an Application for Contempt Citation, asserting, among other things, that "[Mother] has not allowed [him] to visit his [child] pursuant to" the decree, and that Mother had failed to comply with the order pertaining to counseling and had "unilaterally decided to cease providing the child to counseling." Father stated he "only sought legal intervention when it became apparent that [Mother] would not adhere to the Order of the Court."[1] Father also filed a motion to enforce.

¶6 In August 2019, Mother filed a motion to modify in which she asserted, among other things, that a substantial and permanent change of condition had occurred in that the child "is now 12 years old and is mature enough to voice her preference in this case," and "[t]he child expresses on a regular basis that she does not want to visit with [Father]."

¶7 Also in August 2019, a Guardian ad Litem (GAL) was appointed on behalf of the child.

¶8 In October 2019, Father filed a motion to modify and an objection to Mother's motion to modify. Father asserted the following changes, among others: During the marriage and following the divorce until August 2018, Father "possessed a normal healthy relationship with [child]," but since that time Mother "has conducted a pattern of parental alienation which has adversely affected the father-daughter bond"; Mother "fails to facilitate visitation" and has "taken measures to block [Father] from having communication with [the child]"; Mother continues to violate court orders relevant to visitation and counseling; and Mother "physically assaulted [Father] in the presence of child." Father requested that the court modify custody by awarding custody of the child to him with reasonable visitation to Mother.

¶9 As stated by the district court at the trial ultimately held in June 2021, "this matter was continued more times than I can count between 2019 and all through 2020." As summarized by Mother in her appellate brief, the district court

entered a Scheduling Order, requiring mediation to be completed by December 6, 2019, scheduling a resolution conference on December 16, 2019, and indicating that a hearing on the merits would be set at the resolution conference if necessary. That resolution conference was continued to January 28, 2020. On that date, the matter was set for hearing on the merits May 14, 2020, and May 15, 2020. On or about May 4, 2020, the previously scheduled hearing on the merits was stricken and rescheduled to July 30, 2020, and July 31, 2020. . . . [T]hose trial dates were apparently stricken.

Thereafter, the case was administratively reassigned to a different judge on or about February 5, 2021, and a hearing on the merits was then rescheduled to May 17, 2021.

¶10 On May 18, 2021, counsel for Mother filed a motion to withdraw as counsel in which she asserted she "is not able to represent [Mother] in this case and have (sic) come to an impasse." Trial was set for May 25, 2021, at which the parties appeared. Although no transcript of the May 2021 proceeding is provided on appeal, the parties agree that, on this date, the district court granted Mother's counsel's request to withdraw and "reset the hearing on the merits to begin on June 23, 2021."[2]

¶11 On June 23, 2021, at the beginning of trial, Mother requested another continuance in order to hire counsel, a request which was denied by the court after observing that the parties had "set today's court date by agreement" at the May 25 proceeding, and "that everyone was in agreement for this to be the day that we would handle the Motions to Modify . . . ." Counsel for Father also objected to Mother's motion to continue, stating a continuance "would not be in the child's best interest, and it's prejudicial to [Father] to continue to allow [Mother] to have continuances and change counsel." The GAL also objected, stating that resolution of the motions to modify had already been postponed for long stretches of time and

[t]he child is in a lot of distress about what is happening in Court, and I do believe it's in the best interest of the child to move forward today and have a hearing, which the Court ordered and gave everyone ample notice and opportunity that this hearing was going to happen today.

¶12 In response, Mother pointed to 12 O.S. Supp. 2020 (now 2021) § 2005.2(C), which provides, in part, that "[t]he order allowing withdrawal shall notify the unrepresented party that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal[.]" Based on this statute, she argued trial could not be held within thirty days of the order of withdrawal. Because it had been twenty-nine days since the order allowing withdrawal, Mother asserted a continuance was required. Mother also asserted she had attempted to make an appointment with an attorney, but acknowledged she had yet to make an appointment with an attorney. She requested additional time to make an appointment and "get them up to speed on all of the records and all of the motions and hearings that we have."

¶13 After denying Mother's motion, trial commenced, and, over the course of three days, six witnesses testified. The court then took the matter under advisement.

¶14 In its Journal Entry of Order of Modification, the district court, pertinent to this appeal, denied Mother's motion to modify, and sustained Father's motion to modify. The court explained it allowed the child to express a preference, and that it considered that preference, but found that following the child's preference in this case would be contrary to the minor's best interest. The court further stated that Father

met his burden under the Gibbons v. Gibbons, 1968 OK 77, 442 P.2d [482] standard. The evidence is sufficient to prove that since the entry of Decree of Dissolution of Marriage and Visitation Schedule there has been a material, permanent and substantial change of condition and circumstances which warrants a modification of custody. Further, the Court considered the evidence and actions of the parties as it relates to 43 O.S. § 112(3)(a),[3] specifically who is more likely to facilitate a relationship with the other parent.

The court awarded Father sole legal and physical custody of the child, and found Mother's visitation with the child "shall be supervised at this time until she completes a psychological evaluation," an evaluation which was previously ordered but never undertaken by Mother.[4]

¶15 Mother filed a Motion for New Trial "pursuant to 12 O.S. § 651 and Rule 17 of the Rules for District Courts of Oklahoma."[5] Pertinent to the issues raised on appeal, this motion was denied by the district court in its order filed on March 28, 2022.[6]

¶16 Mother appeals.[7]

STANDARD OF REVIEW

¶17 "Motions for New Trial are directed to the sound discretion of the trial court, and the court's ruling thereon will not be disturbed on appeal in the absence of an abuse of that discretion." Record v. Record, 1991 OK 85, ¶ 6, 816 P.2d 1139, 1141 (internal quotation marks omitted) (citation omitted). See also Hull v. Hull, 2000 OK CIV APP 88, ¶ 3, 11 P.3d 222, 224 ("A trial court is vested with broad legal discretion in granting or denying a new trial, and unless it clearly appears that the trial court erred in some pure, simple question of law, or acted arbitrarily, its judgment will not be disturbed on appeal." (citation omitted)).

¶18 Likewise, "[w]e review a grant or refusal of a motion to continue for abuse of discretion." In re J.L.O., 2018 OK 77, ¶ 18, 428 P.3d 881, 888 (citations omitted). See 12 O.S. 2021 § 667 (A district court "may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just[.]"). "It is a settled rule of law that an application for continuance is addressed to the sound discretion of the trial court, and that the granting or refusal of a continuance will not be reversed by an appellate court unless it clearly appears that there is an abuse of discretion." Anderson v. Chapman, 1960 OK 235, ¶ 6, 356 P.2d 1072, 1073.

¶19 Similarly, "we review custody modification decisions for abuse of discretion." Marsh v. Marsh, 2007 OK CIV APP 60, ¶ 4, 165 P.3d 358, 360 (citation omitted).

[T]he appropriate standard of review in a custody modification is abuse of discretion. Nevertheless, before we can presume the trial court's decision correct, it must be supported by the record. A clear abuse of discretion occurs when a challenged decision is against or unjustified by reason and evidence. Further, even where the trial court is vested with broad discretionary powers, its order will be reversed if it erred with respect to a pure, simple and unmixed question of law.

Casey v. Casey, 2002 OK 70, ¶ 23, 58 P.3d 763, 771 (footnotes omitted). See also Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591, 608 (abuse of discretion standard "includes appellate review of both fact and law issues," but issues of law are reviewed de novo, i.e., without deference to the lower court); Curry v. Streater, 2009 OK 5, ¶ 1, 213 P.3d 550, 552 ("Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law."). "In a divorce action, the trial court is vested with discretion in awarding custody and visitation, but the best interests of the child must be a paramount consideration." Rowe v. Rowe, 2009 OK 66, ¶ 3, 218 P.3d 887, 889 (citation omitted).

ANALYSIS

I. Motion for Continuance

¶20 Mother asserts the district court's denial of her request for a continuance "constituted an abuse of discretion and denied [Mother] her right to a fair trial."[8] In support, she cites to 12 O.S. § 2005.2(C), which provides, in pertinent part, as follows:

In civil actions, the court may grant a motion to withdraw where there is no successor counsel only if the withdrawing attorney clearly states in the body of the motion the name and address of the party. The order allowing withdrawal shall notify the unrepresented party that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal and that a failure of the party to prosecute or defend the case may result in dismissal of the case without prejudice or a default judgment against the party. If no entry of appearance is filed within thirty (30) days from the date of the order permitting withdrawal, then the unrepresented party, other than a corporation, is deemed to be representing himself or herself and acting pro se. In all cases, counsel seeking to withdraw shall advise the court if the case is currently set for motion docket, pretrial conference, or trial.[9]

¶21 Mother asserts the district court, in denying her request to continue and proceeding with trial twenty-nine days after the order of withdrawal, "did not follow the plain language" of § 2005.2(C). She asserts:

It appears clear from the plain language of that statute that a litigant should be allowed at least thirty (30) days from the date of an order allowing withdrawal to either decide to proceed pro se or hire counsel. The failure of the trial court to follow this explicit language constitutes an irregularity in the proceedings which justifies a new trial. . . . It seems reasonable to assume that a non-attorney pro se litigant would interpret that statute to allow her sufficient time to obtain an attorney.

¶22 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 17, 415 P.3d 521, 528 (citations omitted). "It is presumed that the Legislature has expressed its intent in a statute's language and that it intended what it so expressed." Id. (citations omitted). "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Keating v. Edmondson, 2001 OK 110, ¶ 8, 37 P.3d 882, 886 (footnote omitted). "Only where legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation employed." Odom, ¶ 18, 415 P.3d at 528 (citations omitted). However, courts "may not change, modify, amend, or restrict the plain language of a statute under the guise of statutory interpretation." Okla. Alcoholic Beverage Control Bd. v. Cent. Liquor Co., 1966 OK 243, ¶ 0, 421 P.2d 244, 245 (Syllabus by the Court).

When a court is called on to interpret a statute, the court has no authority to rewrite the enactment merely because it does not comport with the court's view of prudent public policy. Also, the wisdom of choices made within the Legislature's law-making sphere are not our concern, because those choices -- absent constitutional or other recognized infirmity -- rightly lie within the legislative domain.

Head v. McCracken, 2004 OK 84, ¶ 13, 102 P.3d 670, 680 (citations omitted).

¶23 The plain language of § 2005.2(C) contains the following mandatory requirements: (i) that a motion to withdraw can be granted "where there is no successor counsel only if the withdrawing attorney clearly states in the body of the motion the name and address of the party"; (ii) that a withdrawing attorney shall notify the former client "that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal"; (iii) "[i]f no entry of appearance is filed within thirty (30) days from the date of the order permitting withdrawal, then the unrepresented party, other than a corporation, is deemed to be representing himself or herself and acting pro se"; (iv) that a withdrawing attorney shall notify the former client "that a failure of the party to prosecute or defend the case may result in dismissal of the case without prejudice or a default judgment against the party"; and (v) that a withdrawing attorney "shall advise the court if the case is currently set for motion docket, pretrial conference, or trial." Contrary to Mother's argument, § 2005.2(C) does not contain any explicit requirement that a hearing or trial not be held within thirty days of an order of withdrawal.

¶24 However, the question remains whether, in order to allow the unrepresented party to obtain counsel, it is plainly deducible that an implied requirement exists that no proceedings be held for thirty days. After all, "[s]tatutes must be read to render every part operative, and to avoid rendering it superfluous or useless." Odom, ¶ 36, 415 P.3d at 532 (citations omitted). The rule in this regard has been articulated as follows:

Only when the circumstances clearly indicate that in enacting the statute the legislature has overlooked something will this court apply rules of statutory construction in an effort to clarify and make sensible an act's purview. However, [t]o enable [a] court to insert in a statute omitted words or read it in (sic) different words from those found in it, the intent thus to have it read must be plainly deducible from other parts of the statute.

Wylie v. Chesser, 2007 OK 81, ¶ 19, 173 P.3d 64, 71 (citations omitted) (emphasis in original).

¶25 The intent to prohibit the holding of a trial (or other proceeding) within a specific time of the filing of an order of withdrawal is not plainly deducible from the statute. The statute reveals a clear intent on the part of the Legislature that certain information be provided to the unrepresented party and the court; however, as the present case attests, these and the other mandatory terms of the statute set forth above are not rendered superfluous or inoperative -- certainly not here or in every conceivable instance -- by the holding of a hearing, conference or trial within thirty days. Indeed, the statutory language appears to indicate the opposite: that the Legislature did not intend to revoke the flexibility a district court might otherwise have in scheduling proceedings in a case.

¶26 Mother cites to Crussell v. Osborn, 1979 OK CIV APP 11, 592 P.2d 984, in support of her assertion that a person should have time to obtain adequate counsel, an assertion with which we do not disagree. Although the circumstances in Crussell are plainly distinguishable in that they involved an order of withdrawal "on the same day" that the trial was to be held, a failure on the part of the defendant to appear, a default judgment against the defendant, and a refusal on the part of the district court to vacate the default judgment, we do not disagree with Mother's assertion that an unrepresented party "should have time" to obtain counsel.[10] Indeed, relevant to the present case, the proximity in time of a trial to an order of withdrawal is certainly an important factor to consider in determining whether a motion for a continuance (i.e., to obtain counsel) should be granted. However, we disagree with Mother that § 2005.2(C) -- which is not cited or discussed in Crussell -- implicitly creates a specific, mandatory and across-the-board time restriction on the holding of proceedings, as proposed by Mother. While the Oklahoma Supreme Court has "recognize[d] the possibility that a statute may express a mandatory requirement in the absence of express language stating that the requirement is mandatory," In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 25, 326 P.3d 496, 507 (emphasis in original), here, not only is there an absence of express language stating that the requirement proposed by Mother is mandatory, but the requirement which she proposes is also not express.

¶27 Nevertheless, even if such a mandatory requirement is deemed to be impliedly embedded in the statute, Mother waived that requirement in the present case. "[A] waiver occurs where there is a voluntary and intentional relinquishment of a known right," and "a right may be waived whether conferred by law or contract." Perry v. Perry, 1976 OK 57, ¶ 5, 551 P.2d 256, 257 (citations omitted). "A person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary." House v. Town of Dickson, 2007 OK 57, ¶ 16, 193 P.3d 964, 969 (citation omitted). See Spicer's, Inc. v. Burk, 1953 OK 103, ¶ 7, 261 P.2d 222, 224 ("[A]n employer and insurance carrier may waive the [statutory] requirements . . . that a claim for compensation under the Workmen's Compensation Act be filed with the commission within one year after the injury."). See also Higgins v. State, 1973 OK CR 59, ¶ 20, 506 P.2d 575, 578 ("[A] defendant in a criminal case may waive any statutory or constitutional right either by express agreement or conduct or by such failure to insist upon it seasonably." (citation omitted)).

¶28 Mother, who has no right to counsel in this case,[11] agreed at the hearing twenty-nine days before trial to proceed with trial on June 23, 2021. The district court stated to Mother at trial: "ma'am, I distinctly recall asking if this date was okay. And you said yes[.]" As quoted above, the court stated that the parties had "set today's court date by agreement" at the May 25 proceeding, and "that everyone was in agreement for this to be the day that we would handle the Motions to Modify . . . ." It is undisputed that this agreement was reached, and that only at trial (i.e., on the date agreed upon) did Mother object and seek a continuance. Therefore, even assuming the statute implies a thirty-day suspension of proceedings to allow the unrepresented party to obtain counsel, Mother waived that requirement.

¶29 Although we conclude Mother's argument is not supported by 12 O.S. § 2005.2(C), we must nevertheless determine whether, under the facts and circumstances of the present case, the district court's denial of Mother's motion to continue is clearly against the evidence. See Curry, ¶ 1, 213 P.3d at 552 ("Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law."). The Oklahoma Supreme Court has "also held that the applicable chief test is 'whether the grant or denial of the motion operates in the furtherance of justice.'" In re J.L.O., ¶ 20, 428 P.3d at 888 (citation omitted). In this regard, a number of facts weigh in favor of the district court's decision. First, it remains relevant to our analysis that Mother agreed at the hearing twenty-nine days before trial to proceed with trial on June 23, 2021, and she failed to seek the continuance in question until the day of trial.[12]

¶30 Second, Mother acknowledged at trial that she would be unable to hire an attorney, much less have an attorney prepared, by the following day (i.e., the final day of her proposed mandatory thirty-day window).[13] Indeed, based on Mother's assertions, she needed additional weeks in which to hire an attorney, and additional time after that to allow for the new counsel to prepare.[14]

¶31 Third, as Mother acknowledged at trial, the district court had to take into account not only the interests of Mother, but also of Father and the child.[15] As quoted above, the GAL stated that the child was "in a lot of distress about what is happening in Court, and I do believe it's in the best interest of the child to move forward today and have a hearing[.]" The GAL stated that "this child is in a lot of distress over this situation and needs some resolution." Relatedly, although the child was twelve at the time of the first filings to be resolved at trial, on the date of trial the child was fourteen-and-a-half years old and was still awaiting resolution.[16]

¶32 Fourth, the case had already been postponed repeatedly, partly as a result of Mother's actions. As stated by the district court, "this matter was continued more times than I can count between 2019 and all through 2020."[17] Although, as stated by the court, the delay was not entirely Mother's fault, Mother was partially to blame.[18]

¶33 Fifth and finally, Mother had demonstrated a willingness to disobey orders of the district court -- such as undertaking a psychological evaluation, and regarding allowing visitation or the details of Father's visitation or counseling with the child -- and the district court may have justifiably viewed Mother's request as dilatory in nature.[19]

¶34 On the other hand, it may have been ideal for Mother to have been represented by an attorney at trial. However, as above stated, no right to counsel exists here. Our review of all the facts and circumstances reveals the district court's decision is not clearly against the evidence.

¶35 The Oklahoma Supreme Court has cautioned:

The prompt trial and determination of cases in court is most commendable, but when a trial is forced with such dispatch as to result in depriving an interested party of reasonable opportunity to prepare for trial, and secure witnesses; and the whole circumstances are such as to convince that there was an abuse of judicial discretion, it is the duty of this court to reverse[.]

Whether the ruling of a court on a motion for continuance is within the proper exercise of its sound discretion usually depends on the facts of the particular case, the chief test being whether the grant or denial of the motion operates in the furtherance of justice.

Bookout v. Great Plains Reg'l Med. Ctr., 1997 OK 38, ¶¶ 11-12, 939 P.2d 1131, 1135 (citation omitted).

¶36 It is clear that this is not a circumstance in which trial was forced with such dispatch as to result in depriving Mother of a reasonable opportunity to prepare for trial; rather, under the facts of this particular case, the denial of Mother's continuance request operated in the furtherance of justice and is not clearly against the evidence. Consequently, the district court did not abuse its discretion in denying the motion to continue.

II. GAL Report

¶37 Mother asserts "the fact [she] never received a copy of the [GAL] report[] constitutes an abuse of discretion and a denial of [her] due process rights."[20] Mother provides no legal authority in support of this argument. "Argument without supporting authority will not be considered." Okla. Sup. Ct. R. 1.11(k)(1), 12 O.S. 2021, ch. 15, app. 1. In addition, Mother acknowledges "[i]t is a very common practice for the [GAL] to request" that the parties "are not allowed to have a physical copy of the report," and she acknowledges the record reflects she was given 45 minutes to review the GAL report the day before the GAL was to testify. Mother fails to acknowledge, however, that she was also given a copy of the report "to reference while [the GAL was] testifying" the following day. There is no indication in the record that the 45 minutes was insufficient time for her to review the report, or that Mother requested, but was denied, a longer time to review the report. Regardless, she was provided a copy the following day during the relevant testimony. Therefore, Mother's argument lacks merit.

III. Preference of the Child

¶38 In her third proposition, Mother appears to argue that although the child expressed a preference to remain with Mother, the court may have improperly disregarded that preference as a result of the GAL testifying "the child was living with extreme mental health issues" and testifying "that different counselors had concerns" regarding the child's mental health or the mental health of Mother and its effect on the child. Mother argues "[i]t was an error for the Court to allow . . . testimony regarding an undiagnosed mental illness" by the GAL, who is a "non-expert."[21] Mother concludes her argument by stating: "There is no evidence whatsoever in the record that this child suffered any type of mental disorder which would prevent the Court from honoring her preference, especially in light of the fact that she was 14 ½ years of age as of the date of trial."

¶39 The district court was not required to follow the child's preference, regardless of the child's age. Title 43 O.S. 2021 § 113(A)[22] provides that "the child may express a preference as to which of the parents the child wishes to have custody[.]"[23] Section 113(C) provides that "[t]here shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference." However, § 113(D) provides as follows:

If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits to or periods of visitation. Interviewing the child does not diminish the discretion of the court in determining the best interest of the child. The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation.

(Emphasis added.)

¶40 Moreover, although Mother asserts "[i]t was an error for the Court to allow . . . testimony regarding an undiagnosed mental illness," Mother does not assert she objected to this testimony, nor does she cite to any place in the record where such a contemporaneous objection may be found. Where no objection to the evidence appears in the record, the party has waived the objection. See Weathers v. Fulgenzi, 1994 OK 119, ¶ 23, 884 P.2d 538, 543.

¶41 A review of the transcript of the GAL's testimony similarly reveals no objection.[24] The GAL did testify that Mother's household where the child had been residing is "an incredibly dysfunctional household" and that Mother has been "struggling with mental illness[.]" The GAL stated, "I'm not a doctor," but that she based her opinion on her "training and education and doing this type of work for 15 years[.]" Based on this training and experience, she stated that Mother "appears" to be "struggling with mental illness[.]"

¶42 The GAL was "appointed to objectively advocate on behalf of the child and act as an officer of the court to investigate all matters concerning the best interests of the child." Rowe, ¶ 4, 218 P.3d at 889.[25] For her part, Mother was ordered to undertake a mental health evaluation long before the trial, but failed to follow this order. In effect, Mother argues on appeal that she should benefit from her refusal to undertake a psychological evaluation, an argument which we find unpersuasive. Moreover, the GAL's testimony is consistent with Mother's own testimony at trial. Mother testified that she was suffering from multiple mental health issues, including anxiety and depression, and that she was taking a number of medications for these mental health issues.

¶43 Of course, this is not the only evidence presented to the court pertaining to custody. The court also heard extensive evidence from multiple witnesses regarding Mother's interference and even sabotage of Father's relationship with the child. The court heard Father's testimony regarding Mother's decline and detailed testimony regarding her physical attack of him. The GAL testified:

I think this case is unfortunately very, very sad and very, very unfortunate. I can say this is the saddest case I have ever had as a guardian ad litem. And I've done this work for 15 years. . . . We have a child who, I believe, has been manipulated due to her mother's mental health issues.

¶44 Having reviewed all the evidence presented at trial, we conclude the court's decision to not follow the child's preference in this case is not clearly against the evidence or an abuse of discretion.

CONCLUSION

¶45 We conclude the district court did not abuse its discretion in denying Mother's motion to continue and in deciding not to follow the child's preference in this case. We also find that Mother's argument pertaining to the GAL report lacks merit. Consequently, we conclude the court did not abuse its discretion in denying Mother's motion for new trial.

¶46 AFFIRMED.

WISEMAN, P.J., and HIXON, J., concur.

FOOTNOTES

[1] Father filed a second application for contempt in August 2019, and a third in January 2021. He filed a fourth application in July 2021 in open court.

[2] Mother's Br.-in-chief at 3.

[3] That subsection provides that, "[w]hen in the best interests of the child, custody shall be awarded in a way which assures the frequent and continuing contact of the child with both parents," and "[w]hen awarding custody to either parent, the court: a. shall consider, among other facts, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent[.]" 43 O.S. 2011 (now 2021) § 112(C)(3)(a).

[4] The court also found the child is to begin counseling immediately, and also undergo a psychological evaluation.

[5] Mother filed her motion in July 2021, before the filing of the Journal Entry of Order of Modification on January 20, 2022 (but after the filing of the district court's Summary Order in which it first stated it would grant Father's motion to modify). "A motion for new trial filed after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree." Okla. Sup. Ct. R. 1.22(c)(1), 12 O.S. 2021, ch. 15, app. 1.

[6] Although not relevant to this appeal, we note that the district court did order "a new trial set for the contempt" "due to the quasi-criminal nature of contempt[.]"

[7] Mother originally appealed within thirty days of the Journal Entry of Order of Modification, at which time her motion for new trial had been denied by Summary Order only. In an order filed in March 2022, the Oklahoma Supreme Court directed Mother "to file a supplemental petition in error, . . . attaching a certified copy of an order denying [her] motion for new trial . . . ." In an order filed on April 22, 2022, the Supreme Court "note[d] [Mother's] filing of a supplemental petition in error attaching the March 28, 2022 journal entry . . . which disposed of [her] motion for new trial. Accordingly, this appeal shall proceed. . . ."

[8] This issue is also set forth in Mother's motion for new trial.

[9] The Oklahoma Comments to § 2005.2 state, in part, that "[t]he purpose of the requirements in paragraph (C) for motions to withdraw is to provide the client with notice of counsel's withdrawal so that the client may either retain other counsel or proceed with the case pro se."

[10] Notably, in Crussell, the default judgment was entered on June 28, 1977, and the defendant was able to retain counsel within approximately two weeks, which counsel filed the motion to vacate on July 14.

[11] The Oklahoma Supreme Court stated in Kiddie v. Kiddie, 1977 OK 69, 563 P.2d 139, as follows:

As yet we have found no recognition by a state court of a constitutionally grounded right to appointment of counsel in a divorce proceeding. Oklahoma recognizes no absolute constitutional right to a divorce. While assistance of counsel is certainly helpful in obtaining relief, without the existence of this constitutional right, the protection of the fourteenth amendment due process and its consequent right to counsel do not emerge.

Kiddie, ¶ 17, 563 P.2d at 142. Subsequently, in Harmon v. Harmon, 1997 OK 91, 943 P.2d 599, the Supreme Court noted:

The instant matter does not involve the potential for the termination of . . . parental rights concerning the minor child of the marriage, i.e. a situation where this Court has generally indicated a right to counsel for indigent parents exists. We do not believe [the parent in question] has a constitutionally protected right to counsel in this divorce case merely because it involves property issues and issues concerning custody/visitation with a minor child. See Haller v. Haller, 168 Mich. App. 198, 423 N.W.2d 617 (1988) (no due process right to counsel in divorce case merely because issues therein concern custody of minor child).

Harmon, ¶ 17 n.5, 943 P.2d at 605 n.5 (citation omitted). See also King v. King, 174 P.3d 659, 667 (Wash. 2007) (en banc) (In many "[s]tate courts that have considered the matter," including Oklahoma, "there is no right to counsel at taxpayer expense in a dissolution action.").

[12] Thus, she sought her most recent continuance only after Father -- a nurse anesthetist who had taken off work and traveled from Stillwater -- Father's counsel, the GAL, and various witnesses were present and prepared to proceed.

[13] As it turned out, an attorney did not enter an appearance on the second day of trial (the thirtieth day following the order of withdrawal), or the third day of trial (the thirty-first day).

[14] The GAL expressed consternation that "I'm afraid what will happen is we'll get a continuance and there still will not be another attorney. And then whatever attorney will come in will ask -- if one does come -- will ask for another continuance and we'll be further down the road."

[15] Cf. State ex rel. Dep't of Transp. v. Caliber Dev. Co., LLC, 2016 OK CIV APP 1, ¶ 21, 365 P.3d 1067, 1074 (approved for publ'n by Okla. Sup. Ct.) ("The issue is whether the denial of the continuance was unjust considering the interests of both parties.").

[16] The child is now sixteen years old.

[17] Cf. Caliber, ¶ 21, 365 P.3d at 1074 ("[T]he Department had already sought and been granted one continuance of a previous trial setting. A second continuance would have [further] delayed the trial . . . .").

[18] For example, Mother filed a motion for continuance on August 8, 2019, stating she "just recently retained new counsel, who is not prepared to try the case in two (2) weeks." The case was continued.

[19] "[O]ne who urges more time to prepare must produce evidence of his due diligence during the period which he had to prepare." First Nat'l Bank v. Okla. Sav. & Loan Bd., 1977 OK 171, ¶ 9, 569 P.2d 993, 997 (footnote omitted). Mother, in effect, asserted due diligence in searching for new counsel, but the district court was not required to believe Mother -- who presented no proof in this regard at trial -- that she had undertaken reasonable efforts to obtain counsel following the May 18, 2021 hearing. Indeed, Mother's testimony was not consistent regarding the amount of her efforts. Father even asserts Mother was refusing to assist her previous counsel with preparation for trial. See Answer Br. at 2. Regardless, "[t]he trial court is ideally situated to assess the credibility of witnesses." Childers v. Childers, 2016 OK 95, ¶ 18, 382 P.3d 1020, 1024 (footnote omitted). See also Bills v. Bills, 2022 OK CIV APP 27, ¶ 14, 514 P.3d 485, 489 ("The court chose to believe Wife's testimony over Husband's recollection, and this Court will defer to the trial court's judgment. The credibility of witnesses and the effect and weight of conflicting or inconsistent testimony are questions of fact to be determined by the trier of fact, and are not questions of law for the court on appeal." (citation omitted)).

[20] This argument is also contained in Mother's motion for new trial.

[21] This argument is also contained in Mother's motion for new trial.

[22] Last amended in 2011.

[23] Section 113(B) provides that "[t]he court shall first determine whether the best interest of the child will be served by allowing the child to express a preference," and, "[i]f the court so finds, then the child may express such preference or give other testimony."

[24] Pro se litigants are held to the same standard as an attorney. Funnell v. Jones, 1985 OK 73, ¶ 4, 737 P.2d 105, 107.

[25] "The guardian ad litem's obligation remains the same as that of the trial court: the child's best interests, even though the child's wishes may be otherwise. The guardian ad litem may be a witness in the case." Id. (citations omitted).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1973 OK CR 59, 506 P.2d 575, 
HIGGINS v. STATE
Discussed

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2007 OK CIV APP 60, 165 P.3d 358, 
MARSH v. MARSH
Discussed

 
2016 OK CIV APP 1, 365 P.3d 1067, 
STATE ex rel. DEPT. OF TRANSPORTATION v. CALIBER DEVELOPMENT CO. LLC
Discussed

 
1979 OK CIV APP 11, 592 P.2d 984, 
CRUSSELL v. OSBORN
Discussed

 
2022 OK CIV APP 27, 514 P.3d 485, 
BILLS v. BILLS
Discussed

 
2000 OK CIV APP 88, 11 P.3d 222, 71 OBJ 2100, 
HULL v. HULL
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1991 OK 85, 816 P.2d 1139, 62 OBJ 2644, 
Record v. Record
Discussed

 
1994 OK 119, 884 P.2d 538, 65 OBJ 3676, 
Weathers v. Fulgenzi
Discussed

 
1997 OK 38, 939 P.2d 1131, 68 OBJ 1284, 
Bookout v. Great Plains Regional Medical Center
Discussed

 
1953 OK 103, 261 P.2d 222, 
SPICER'S, INC. v. BURK
Discussed

 
2001 OK 110, 37 P.3d 882, 72 OBJ 3672, 
KEATING v. EDMONDSON
Discussed

 
1960 OK 235, 356 P.2d 1072, 
ANDERSON v. CHAPMAN
Discussed

 
1966 OK 243, 421 P.2d 244, 
OKLA. ALCOHOL. BEV. CON. BD. v. CENT. LIQUOR CO.
Discussed

 
1968 OK 77, 442 P.2d 482, 
GIBBONS v. GIBBONS
Cited

 
2002 OK 70, 58 P.3d 763, 
CASEY v. CASEY
Discussed

 
2003 OK 10, 65 P.3d 591, 
CHRISTIAN v. GRAY
Discussed

 
2004 OK 84, 102 P.3d 670, 
HEAD v. McCRACKEN
Discussed

 
2007 OK 57, 193 P.3d 964, 
HOUSE v. TOWN OF DICKSON
Discussed

 
2007 OK 81, 173 P.3d 64, 
WYLIE v. CHESSER
Discussed

 
2009 OK 5, 213 P.3d 550, 
CURRY v. STREATER
Discussed

 
2009 OK 66, 218 P.3d 887, 
ROWE v. ROWE
Discussed

 
1976 OK 57, 551 P.2d 256, 
PERRY v. PERRY
Discussed

 
2014 OK 23, 326 P.3d 496, 
IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed

 
1977 OK 69, 563 P.2d 139, 
KIDDIE v. KIDDIE
Discussed

 
1977 OK 171, 569 P.2d 993, 
FIRST NAT. BANK v. OKLAHOMA SAV. & LOAN BD.
Discussed

 
2016 OK 95, 382 P.3d 1020, 
CHILDERS v. CHILDERS
Discussed

 
2018 OK 23, 415 P.3d 521, 
ODOM v. PENSKE TRUCK LEASING CO.
Discussed

 
2018 OK 77, 428 P.3d 881, 
IN THE MATTER OF J.L.O.
Discussed

 
1997 OK 91, 943 P.2d 599, 68 OBJ 2458, 
HARMON v. HARMON
Discussed

 
1985 OK 73, 737 P.2d 105, 
Funnell v. Jones
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 651, 
New Trial - Definition - Causes for
Cited

 
12 O.S. 667, 
Continuances - Power to Grant - Costs - Continuances Mandatory, and Appeals When Member of Legislature is Party or Attorney
Cited

Title 43. Marriage

 
Cite
Name
Level

 
43 O.S. 112, 
Care, Custody, and Support of Minor Children
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA